[Civ. No. 3201. Third Appellate District.—April 30, 1928.]

P. MURRAY, Respondent, v. A. L. KUNDE, Appellant.

W. F. Cowan for Appellant.

W. F. Geary and H. B. Churchill for Respondent.

HART, J.—The plaintiff brought this action for damages in the sum of $10,000 for the alleged wrongful arrest of his person upon a process alleged to have been maliciously caused by defendant to be issued by one Marvin T. Vaughan, justice of the peace in and for Santa Rosa township, in the county of Sonoma. The cause was tried before a jury and a verdict returned in favor of plaintiff in the sum of $1,000. Upon the verdict so rendered, judgment was entered in favor of plaintiff for said sum.

The appeal here is by the defendant from said judgment. The alleged false arrest was founded on a complaint filed by the defendant against the plaintiff in the above named justice's court, on the ninth day of June, 1923, and which charged that on that day the plaintiff (defendant in the criminal action) did, in said county of Sonoma, commit a misdemeanor in that he did "wilfully, unlawfully and

maliciously exhibit, draw and use a deadly weapon, in a rude, angry and threatening manner, and not in necessary self-defense, in the presence of A. L. Kunde and Mrs. Archer Murray.'' (Pen. Code, sec. 417.) The plaintiff, having been arrested on a warrant issued on said complaint, was arraigned before said justice's court and the date of his trial fixed for June 23, 1923. At the request of the accused, on June 15th, the trial was postponed to June 28, 1923, at 10 o'clock A. M. The complainant Kunde (defendant here) in said original action failed to appear at the hour fixed for the trial on the twenty-eighth day of June. After waiting for some time for his appearance, and he (Kunde) not appearing, the justice of the peace made an order dismissing the complaint and discharging the defendant therein (plaintiff here) from the further custody of the law, he then being under bail for his appearance at the trial.

The circumstances out of which the arrest of the plaintiff developed may thus be briefly stated: The plaintiff Murray was an employee of Kunde, defendant here, on the latter's ranch in Sonoma County. His family consisted of himself, wife, and four young children. They resided in a "bunkhouse" on the defendant's ranch. This house consisted of three rooms. The plaintiff kept in the house two weapons— one a rifle, which, at the time of the difficulty leading to his arrest, stood in the corner of the kitchen, and the other a revolver which plaintiff kept under a pillow on his bed. In the month of January, 1923, the Murrays went to the ranch of Kunde, and there took up their residence. Murray had been employed by Kunde as a "ranch hand" and Mrs. Murray was at the same time employed to do the cooking for the men employed on the ranch. Thus the Murrays were employed until the eighth day of June, 1923.

On the eighth day of June, 1923, the plaintiff and Kunde were together in the "cow barn" situated on the ranch. At that time and place Murray notified Kunde that he (Murray) intended to terminate his employment by the former and was going to leave the ranch. The next morning, near the hour of 7 o'clock, Kunde appeared in the house of Murray, opening the door and stepping into the room, without knocking at the door or giving any other warning of his intention to enter, and immediately ordered Murray to pack his belongings and, with his family, depart

from the premises. Replying, Murray, addressing Kunde in a very civil manner, stated that it would not be possible for him to move then, as he had not had an opportunity to arrange for housing his family and furniture elsewhere, and that if he was to be ejected from the premises then, it would have to be done by the sheriff or other officer, who certainly would under the circumstances allow him to remain in the house until the following day. Thereupon Kunde, in language too foul and abominable to be repeated, under any circumstances, in the presence of persons of the least refinement and decency, without a shudder, declared that he would himself put them out then. At the same time he picked up a chair and menacingly approached Murray, who slowly retreated to the bedroom. Mrs. Murray, fearing lest her husband intended to procure the pistol under the pillow, followed her husband with the intention of preventing or attempting to persuade him not to take the weapon from the bed; but Mrs. Murray had taken but a few steps into the bedroom when Murray, without touching or getting the pistol, returned to the room where Kunde was, and started in the direction of the corner of the room where the rifle was standing. He did not take hold of the rifle, however. Kunde had put the chair to the floor and for a time thereafter attempted to strike Murray with his fists, but Mrs. Murray got hold of his trousers and pulled him from her husband, or at any rate prevented him getting near enough to Murray to strike him. During all this time Kunde was very angry and in a furious rage. The children of the Murrays, from the excitement and fear, were almost in a state of hysteria. Kunde finally stepped out of the house, but after taking a few steps therefrom, returned and asked Murray if he would permit him to see his (Murray's) rifle or pistol. Murray refused to do so. Kunde at that time also asked Mrs. Murray if she did not see her husband menacingly brandish a ''gun'' about while the altercation in the house was in progress and she positively replied in the negative. The Murray family and Kunde were the only persons in the house while the trouble was going on. The foregoing statement was taken from the testimony of both Murray and his wife given at the trial of this action.

Kunde and a boy named Beeson, who was of the age of about nine years, and who claimed to have been in the

bunkhouse when the altercation occurred, testified that Murray had a gun in his hands at the time, and Kunde said that he was handling it in a threatening manner. Kunde's version of what occurred in the bunkhouse at the time was entirely different from that of Murray and his wife. According to his testimony, the plaintiff was the aggressor and abused and with a gun in his hand threatened Kunde. He stated on direct examination that in the swearing to the complaint against Murray he was not actuated "by ill-will or any motive of oppressing or injuring Murray," but only because "I wanted the public to know what kind of a man he was." The Beeson boy was unable to remember anything that occurred during the controversy between the two men, except that Murray procured and had a gun in his hand. On observing the gun he became frightened and hurriedly left the house. Both Murray and his wife stated young Beeson was at no time in the house while the difficulty was going on, nor was he in the house, they said, at any other time that morning.

R. H. Bonham, also an employee on the ranch of Kunde at the time of the trouble between plaintiff and defendant, testifying for the former, said that within a very brief time after the occurrences in the bunkhouse, and on the same day, Kunde met witness and told him about the trouble between him and Murray; that, at that time, Kunde stated that he had just been in to see Murray, and had asked him (Murray) to leave the place and they got into a little argument; that he (Kunde) said to witness that Mr. Murray "went in the other room he (Kunde) thought after a gun," and that he (Kunde) then "turned around and walked out."

There is, as thus it is made to appear, a substantial conflict in the evidence as to what occurred in the bunkhouse between Kunde and Murray, and this court must hence accept the verdict of the jury upon the proposition that the altercation in said house occurred substantially as Murray and his wife described it in their testimony.

There is but one general point, involving several of the instructions given to the jury by the trial court, presented here for a reversal of the judgment. The instructions attacked by appellant relate to the question of probable cause for causing the arrest of the plaintiff. It

is the settled rule in cases for damages for malicious prosecution that the question of probable cause is one of law, to be determined by the court, while the question of malice is one for the jury. The instructions which were read to the jury and of which the defendant complains, so counsel for the plaintiff say in their brief, are *"plaintiff's"* instructions Nos. 4, 5 and 10."

The record does not show at whose request the criticised instructions were given—whether at the request of the plaintiff or that of the defendant. "The presumption is, therefore, that they were given at the request of the defendant. (*Gray* v. *Eschen*, 125 Cal. 1, 5 [57 Pac. 664]; *Sutter-Butte Canal Co.* v. *American Rice & Alfalfa Co.*, 182 Cal. 549 et seq. [189 Pac. 277]. A party cannot predicate prejudice on erroneous instructions submitted by the court to the jury by his request." (*Bogunda* v. *Pearson,* 71 Cal. App. 105 [234 Pac. 857]; see, also, *Finkelstein* v. *Cosgrove,* 83 Cal. App. 201 [256 Pac. 608].) The statement by counsel for the plaintiff that the instructions complained of here are "plaintiff's instructions" is no part of the record. But, since the counsel have in effect conceded that the instructions were given by the court at the request of their client we will briefly consider the assignment. The specific contention is that the court in effect instructed the jury that it was within their province to determine whether the arrest was made with or without probable cause. The court, at the request of plaintiff, instructed the jury as follows: "If you find from the evidence in this case that the plaintiff, P. Murray, did not exhibit, draw or flourish a deadly weapon in the presence of two or more persons, to-wit: A. L. Kunde and Mrs. Murray, as alleged in the criminal complaint filed in the Justice's office of Santa Rosa Township, County of Sonoma, State of California, then I instruct you that there is want of probable cause, and, if such want of probable cause was accompanied by malice, your verdict should be for the plaintiff."

The court elsewhere in different instructions in its charge instructed the jury what facts, as a matter of law, were essential to be shown to constitute probable cause for the filing of the charge against the plaintiff, and further instructed them that if they found "by a preponderance of the evidence" that the facts so stated actually occurred, it

would then be their duty to find for the defendant here; but that if they found from the evidence that the facts necessary to constitute probable cause as set forth in such instructions did not occur, then they should find for the plaintiff. The complaint urged against the court's charge involves the three following instructions:

"Malice is a fact to be proved in the case, as any other fact is proved, and you are the judges of that fact and must determine the fact of malice from the evidence alone, and if you find, by a preponderance of evidence, that the defendant, in commencing and prosecuting said criminal charge, was actuated by malice in so doing, your verdict will be for the plaintiff, unless you find that there was probable cause for the commencement and prosecution of said criminal charge, in which event your verdict must be for the defendant."

"The burden of proof of both malice and want of probable cause is on the plaintiff in this case, and if you find by a preponderance of evidence, that the plaintiff has proved that the defendant in commencing and prosecuting said criminal charge, acted without probable cause, and with malice, your verdict must be for the plaintiff."

"If the jury should find from the testimony that the prosecution of the plaintiff by the defendant was without probable cause, then you may justly infer that it was prompted by malice; that would be a presumption or inference, and being merely a presumption may be removed by evidence showing that even without probable cause there was no malice."

The above instructions, taken alone, would imply that the question of probable cause was solely one for the jury's determination, and as so understood would be erroneous.

Where, however, there are several different instructions upon the same legal proposition, and any one or more, but not all of them, unless considered with other correct given instructions, would involve an erroneous statement of the rule, they then should be read together and with any other given instruction stating the rule correctly. As so read, they plainly imply this, and certainly the jury, composed, as we may assume, of persons of average intelligence, would so understand them: That, if they (the jury) found from the evidence that the facts as stated elsewhere by the

court in its charge as constituting probable cause were true or occurred, then it would be their duty to find in favor of the defendant; that if, on the other hand, they found that such facts were not true or did not occur, then it would be their duty to find for the plaintiff. In some five or six different instructions embraced within its charge, the court clearly stated that if the jury found that the plaintiff, on the occasion of the altercation between him and defendant, exhibited a deadly weapon in a threatening and angry manner in the presence of two or more persons, there would then be probable cause for his arrest, prosecution and punishment, and the jury would, therefore, be required to find for the defendant. The record does not show at whose request those instructions were given. The plaintiff in his brief states that they were given on the proposal of the defendant. It is easy to imagine that they were. They stated concretely the law of the case so that anybody could readily grasp and understand it. Indeed, considering the charge in its entirety, it would be difficult to understand how the jury, guided by the law of the case as so given, could have had any trouble in keeping themselves within the limits of their sphere as triers of the facts in passing upon and determining the issues which they were required to decide. The verdict implies that there was want of probable cause for plaintiff's arrest. This means that the jury found that the facts necessary to constitute probable cause, as the court pointed them out, did not occur as the defendant claimed.

The instructions, as a whole, correctly and clearly stated the law pertinent to the issues, the case seems to have been fairly and well tried, and the verdict is well supported by the evidence.

The judgment is affirmed.

Plummer, J., concurred.