[Civ. No. 6990. First Appellate District, Division Two.—March 31, 1931.]

FRANK AMBROSE, Appellant, v. FRANK HOWARD ALLEN et al., Respondents.

Treat & Ogden for Appellant.

Hartley F. Peart and Gus L. Baraty for Respondents.

STURTEVANT, J.—While attempting to enter a building at San Anselmo the plaintiff was injured. He commenced an action to recover damages and in his complaint he named as defendants the owners of the property and F. H. Allen, a contractor, who was at the time engaged in making alterations and repairs. All of the defendants appeared and answered. Immediately before the trial the action was dismissed as to the owners. On the issues so made the cause went to trial before the trial court sitting with a jury. The jury returned a verdict in favor of the defendant. The plaintiff made a motion for a new trial, his motion was denied, and he has appealed under section 953a of the Code of Civil Procedure. The charging part of the complaint is as follows: "That on or about the 12th day of March, 1923, at the instance and upon the request of the defendants the plaintiff visited and entered said dwelling or residence situate on Lot 15 in Idalia Park, San Anselmo, State of California, for the purpose and at the request of defendants of making an estimate upon the cost of painting said dwelling; that this plaintiff was thereupon led by the said defendants across a certain part of said premises, then under the course of reconstruction, the floor of which portion had been removed but the joists theretofore supporting said floor were then in place, and to all outward appearances all of said joists were capable of supporting the

weight of a human being, and in particular the weight of this plaintiff; that the said defendants leading the way across said joists did not advise this plaintiff that any of said joists were of insufficient strength to support his weight, or that the supports under said joists had been removed in such manner as to make it unsafe for this plaintiff to place his weight upon said joists, or any of them, although the said defendants had, and it is hereby alleged, that the defendants had previously, without the knowledge of this plaintiff and without in any way making the fact obvious to anyone about to proceed across said joists, removed the supports under said joists; that said supports so removed by the defendants were necessary to give sufficient strength to said joists, or some of them, to support the weight of this plaintiff; that while so following said defendants and without knowledge of the danger and the dangerous condition of said joists, and without any means of ascertaining the said dangerous condition, this plaintiff did step upon and place his weight on one of said joists, the support to which had theretofore been removed as above set forth, and by reason thereof the said joist gave way and broke, precipitating this plaintiff to the ground, a distance of approximately six feet, causing him to sustain the following physical injuries: His right wrist was dislocated backward on the lower end of the radius with forward dislocation of the semilunar bone.'' The answer of the defendant admits that he was the contractor making the alterations referred to in the complaint; admits that the plaintiff visited the premises for the purpose of making an estimate upon the cost of painting; admits that he preceded the plaintiff, but alleges the latter was free to choose his own path; admits that he did not advise the plaintff that the joists were of insufficient strength to support his weight, or that the supports had been removed; admits that the workman had removed some of the timbers supporting one of the said joists which was necessary in the removal of said structure and the remodeling thereof; admits that plaintiff did step upon one of the said joists, the support under which had been removed as hereinabove alleged, and that the same did give way and break and that plaintiff was precipitated to the ground.

The defendants allege that the plaintiff, because of his calling, knew the hazards of reconstruction work, that he visited the premises under reconstruction and was injured, but that the defendants did not know of any girder or joist from which the supports had been removed, and that the plaintiff was guilty of contributory negligence. The plaintiff's complaint does not use the word ''negligent'' nor any one of its synonyms. However, it pleads the facts. On the trial evidence was introduced proving or tending to prove the allegations of the plaintiff's complaint as modified by the denials of the defendant's answer. There was evidence that as the plaintiff approached the premises the workmen had removed the boards covering the porch and had thus left exposed the girders. As the building had been constructed some of the girders did not extend the full length, but the ends of the shorter girders were caused to abut one against the other and a prop was placed supporting the two short girders. The work had so far proceeded that said props had been knocked out. By reason of percolating water and accumulation of dust and age the joint in the girder was not apparent. Our attention has not been called to the fact that any person or persons saw or knew of a joint prior to the happening of the accident. Immediately before the accident the plaintiff and the defendant met and talked in the yard. The defendant stated to the plaintiff that the price which he had bid on the painting that was to be done on the job was too high. He further stated to the plaintiff that he had the plans inside and asked the plaintiff to go inside and examine them. Thereupon the defendant turned and walked toward the inside of the building. In doing so he stepped on the girders and passed over the torn-up porch. The plaintiff followed him. As he did so he stepped on one of the abutting joints, it gave way, he fell, and suffered the injuries complained of in this action.

■ The plaintiff contends that there is no evidence of contributory negligence on his part. We think that statement is too broad. He testified that as a contracting painter he had been on buildings in the course of construction, and he knew what a scab joist was. He also testified that he was on this particular property a short time before and he knew that it was undergoing alterations and repairs.

Mr. Allen testified that he had theretofore described to the plaintiff the work that was to be done, including the proposed alteration in the porch. He further testified that on the date of the accident the work had been under way for some time. There were different mechanics on the job. As to the porch, the flooring had all been removed, a portion of the awning above had been taken down, and the men were at work removing the rest of it. In addition to the door which the parties were proceeding to enter there were five or six different ways to enter. He testified that he did not say to the plaintiff, "This is work under construction, you had better look out", and neither did he ask the plaintiff to follow him. The accident occurred about 2 P. M. and there was nothing to obscure the view of the plaintiff. The joists were 2x6 and it was necessary to walk diagonally in order to get a foot rest. Under these circumstances the plaintiff proceeded to walk forward, stepping on the edges of the joists. By its verdict the jury found all of the issues against the plaintiff. This court may not hold as a matter of law that the facts contained in this record do not support the verdict of the jury on the issues we are now considering. (45 C. J. 957.) As the cases which we have found deal both with the subject of the defendants' negligence, if any, and the contributory negligence of the plaintiff, if any, we will cite them after considering the second point made by the plaintiff.

The plaintiff's second point is that the evidence conclusively proved negligence on the part of the defendant. In this connection the plaintiff urges most earnestly that as the case went to the jury the question was as to whether the defendant personally knocked the prop out from under the abutted joist. With this contention we cannot agree. There was not a particle of evidence to the effect that the defendant personally knocked the prop out. We have not noted any evidence that the defendant personally did any work on the premises, but that he worked through his employees. As a part of the instructions given to the jury the court gave, on plaintiff's request, an instruction: "If therefore from all the evidence you should find that the employees of the defendant, while in the line of their ordinary duties or acting under instructions, failed to exercise the precautions which a reasonable, prudent man would or

should exercise under the circumstances, and that as a result of this failure the plaintiff suffered an accident without fault on his part, then I charge you that you should find for the plaintiff and against the defendant.'' Furthermore, as to who personally knocked out the prop was not an issue. The plaintiff had alleged that the defendant had removed the supports and the defendant in his answer admitted that he had removed the support. As to this defendant the claim of negligence on his part is that he did not warn the plaintiff. But he was not bound to warn him of an obvious danger (*Shandley* v. *American Olive Co.*, 185 Cal. 552, 555 [197 Pac. 793]). In other words, as we understand the plaintiff it is his contention that if the defendant or his employees removed the supports, and allowed him to enter without being warned, then the defendant was negligent. He cites many authorities to the effect that the plaintiff was an invitee, and that the defendant owed to him the duty of exercising ordinary care. Conceding, but not deciding, both propositions to be sound, they do not by any means determine the case. The argument of the plaintiff assumes that reasonable care to be exercised by the defendant of a building undergoing alterations and repairs is the same as reasonable care on a building that is entirely completed. As one of its instructions the trial court properly stated to the jury, among other things, ''Negligence is not absolute, but is a relative matter, depending upon time, place, persons, and circumstances.'' The argument of the plaintiff entirely ignores that factor. In *Doremus* v. *Auerbach et al.*, 176 App. Div. 512, 163 N. Y. Supp. 239, at page 242, the court said: ''The fact that the building and the stairway were evidently in process of construction charges those concerned in its construction with a very different degree of care from that which attaches to the owner of a completed building. . . . '' In the case of *Cole* v. *L. D. Willcutt & Sons Co.*, 218 Mass. 71 [105 N. E. 461, at page 462], the court said: ''But the plaintiff contends that the defendant had invited him to use the stairs, and so owed him a duty to keep them in safe condition for his use. If there was such an invitation, it was merely to use them in the condition in which they were with whatever work was openly and plainly being done upon them.'' In *Gainey* v. *Peabody et al.*, 213 Mass. 229 [100 N. E. 336],

the court said: "The mere existence of a hole in the floor of a building in process of construction is in itself no evidence of negligence. It is one of the conditions which, apart from statutory obligation to guard, must be anticipated by anybody working there." In the case of *Holland* v. *Turner*, 189 App. Div. 566 [178 N. Y. Supp. 382], the court was considering a case brought by an injured workman. He was working on a building under repair. The carpenters had torn up the floor in two different places. In one place the side supports had been removed. The plaintiff attempted to cross on the joists but one of the joists tipped over and he suffered the injury. On page 383 (of 178 N. Y. Supp.) the court said: "Instead of taking this safe path, he chose to make a short cut, and pass over joists from which the flooring had been taken up, and from which the side supports had been taken away. I can find no evidence of negligence on the part of the defendant, and abundant evidence of contributory negligence on the part of the plaintiff. If this were the only pathway to the head of the stairs, and persons had occasion to go up and down the stairs, a different question might be presented; but defendant was proceeding to do just what he was engaged to do, taking down these joists in order that he might replace the stairway in a different position." In the case of *M. A. Long Co.* v. *State Acc. Fund,* 156 Md. 639 [144 Atl. 775], the court was considering an accident which occurred in a building under the course of construction. One of the workmen stepped on a joist that had certain knots in it. It broke and he was injured. On page 780 (of 144 Atl.) the court said: "The question in this case, therefore, in the final analysis, depends upon whether the appellant did or left undone anything which resulted in injury to Lappielly, which the average careful and prudent man would not have done or left undone under such circumstances. If the average prudent and careful man would have done what the appellant did in this case, there is no actionable negligence on the part of the appellant, even though an accident occurred which resulted in Lappielly's injury." Continuing on page 781 (of 144 Atl.) the court quoted with approval: " 'Absolute safety is unattainable, and employers are not insurers. They are liable for the consequences, *not of danger but of negligence,* and the unbending test of negligence in methods, machinery, and

appliances is the *ordinary usage of the business*. No man is held by law to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the standard of the average prudent man. . . . ' " *Lentz* v. *Allentown Bobbin Works,* 291 Pa. 526 [140 Atl. 541], is helpful. The plaintiff took a contract to repair the defendant's roof. In doing his work he leaned on one of the boards, it broke, and he fell to the ground and was injured. The break disclosed that the board was rotten, a fact not previously known to plaintiff or defendant, and so far as appears not discoverable by any superficial examination. At page 542 (of 140 Atl.) the court said: "The mere breaking of the board did not prove negligence (citing cases) and beyond that nothing was shown, except the condition of the board disclosed by the break. To hold the employer or property owner liable under such circumstances would place upon him an unreasonable burden which the law does not do. He is only required to use ordinary care to protect those lawfully upon his premises. (Citing cases.) This degree of care does not place upon the property owner the practically impossible task of testing every roof board before removal of the old covering to make way for the new." In *Shandley* v. *American Olive Co.,* 185 Cal. 552, 555 [197 Pac. 793], the court said: "The responsibility of such owner for the safety of such person in such a case is not absolute; he is only required to use ordinary care for the safety of the persons he invites to come upon the premises. If there is a danger attending upon such entry, or upon the work which the person invited is to do thereon, and such danger arises from causes or conditions not readily apparent to the eye, it is the duty of the owner to give such person reasonable notice or warning of such danger. But such owner is entitled to assume that such invitee will perceive that which would be obvious to him upon the ordinary use of his own senses. He is not required to give to the invitee notice or warning of an obvious danger. (29 Cyc. 471; 26 Cyc. 1213.)"

The plaintiff makes many objections to instructions. The record does not show whether the instructions complained of were given by the court of its own motion, or on the request of the plaintiff. We might therefore pass the attacks without further comment. (*Sutter Butte C. Co.* v. *Ameri-*

*can R. & A. Co.,* 182 Cal. 549 [189 Pac. 277].) However, the plaintiff prints in his brief what he claims to be all of the instructions and adds to each a statement as to who requested it. The defendant in his brief does not deny the correctness of any of these statements. Therefore we will pause to make some comments. (*Murray* v. *Kunde,* 91 Cal. App. 440, 445 [267 Pac. 158].) Assuming that there was no evidence of contributory negligence the plaintiff complains because the trial court gave instructions on that subject. We have shown above that this assumption is not well founded. ■ In one instruction given on the request of the defendant the court used the expression "the proximate cause of the injury" and the plaintiff complains because the trial court did not define the expression. It is a sufficient answer to say if the plaintiff wanted a definition given he should have asked for it. The plaintiff's instructions contained the same expression. He had a clear opportunity to make, but did not make, the request. ■ In an instruction given on the request of the defendant the court told the jury that the defendant had pleaded contributory negligence as a defense, and, in the same instruction, the court gave a definition of that term. It committed no error. ■ In another instruction the trial court stated to the jury that the defendant did not warrant the safety of the premises nor was he an insurer. The plaintiff now asserts that this was an instruction on fact. We do not think so. It was but a statement that the pleadings made no such issue. (*Tingley* v. *Times Mirror,* 151 Cal. 1, 28 [89 Pac. 1097].) Again, if it be considered an instruction on a question of fact and therefore improperly given, no prejudicial error arose because the facts covered were not issues in the case. (*Hoffman* v. *Pacific Elec. Ry. Co.,* 45 Cal. App. 751 [188 Pac. 597].) It is next contended that the instruction is in conflict with another instruction which was to the effect that the defendant assumed an obligation to the plaintiff, under the facts, that the premises were in reasonably safe condition. We see no conflict. Neither do we think that they were inconsistent or confusing. Moreover, we have read the entire set of instructions and we do not find any error therein; but, on the other hand, we do find that the jury was fully and correctly advised as to the law applicable to the facts. The next attack is a repetition

of the claim that the jury was instructed that the defendant was liable for his own acts but not the acts of his servants. We have shown above that no such error was made either as to giving instructions or otherwise.

■ The court gave an instruction that the defendant was bound "to use that degree of care which is ordinarily exercised by a reasonable, prudent person under the same or similar circumstances". That was the correct rule. (*Lucas* v. *Walker*, 22 Cal. App. 296 [134 Pac. 374, 379]; *M. A. Long Co.* v. *State Acc. Fund, supra.*)

The plaintiff complains because the court did not "favorably consider the affidavits on motion for a new trial". The reporter's transcript is silent on the subject. The clerk's transcript contains (1) a notice of intention to move for a new trial and (2) certain affidavits and (3) one minute order which is "This matter coming on motion for a new trial, A. J. Treat representing the plaintiff and Thos. P. Boyd representing the defendant, it was by the court ordered that motion for new trial be denied." There is no showing that the affidavits in the clerk's transcript were used or that any were used. The affidavits show two different causes of complaint. ■ (1) The witness C. S. Griffin was excused by the defendant without an order of court or the consent of the plaintiff. As each party had subpoenaed the witness we fail to see any reason why either party might not excuse him or why either party that wanted him did not call him. It is said Griffin is the mechanic who knocked the support out and said support was an upright post and not a stringer. The distinction was wholly immaterial to any issue in the case. ■ (2) Some jurors made affidavits that the affiants thought the sole issue was whether the defendant personally knocked out the support and that they did not know that the defendant as principal was responsible for the acts of his agents done within the scope of their employment. It is settled law that jurors may not in this manner impeach their verdict. (38 Cyc. 1902; *People* v. *Kromphold*, 172 Cal. 512 [157 Pac. 599].) There is nothing in *People* v. *Piero*, 79 Cal. App. 357 [249 Pac. 541], or *Sharkey* v. *Sheets*, 87 Cal. App. 99 [261 Pac. 1049], to the contrary. Moreover, the action was tried by a jury of twelve. There were only three juror affidavits tendered. There is no showing that the other nine jurors did not fully

and completely understand the issues and the law applicable.

 The jury returned a verdict "We, the jury in the above entitled cause, find for the defendant not guilty." The record does not show it was not returned into open court nor that any objection was made to its form. Nor do we understand that the plaintiff now contends to the contrary. But the defendant seems to look upon plaintiff's brief as attacking the form of the verdict. The time to make the attack was when the verdict was rendered (38 Cyc. 1905), and its form, if defective, could have been corrected. The last two words "not guilty" were mere surplusage and do not affect the verdict.

We find no error in the record. The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.