[Civ. No. 20166.   First Dist., Div. Three.   Dec. 17, 1962.]

DOUGLAS L. WHITED et al., Plaintiffs and Appellants, v. SEASIDE OIL COMPANY et al., Defendants and Respondents.

De Meo & De Meo, Donald E. Cavileer and Guernsey Carson for Plaintiffs and Appellants.

Hopkins, Newman & Robinson and Cranson J. Hopkins for Defendants and Respondents.

DEVINE, J.—Severe damage was done to plaintiff's home and to his automobile which was in the carport, by a fire which occurred while an employee of defendant Seaside Oil Company was filling a 114-gallon drum, in the carport, with gasoline. (Husband and wife are plaintiffs, but the singular term is used for convenience.) The amount of damages was stipulated as $21,496.37. Plaintiff's complaint charges negligence of defendants in inspection and maintenance of the drum, and in the delivering of the gasoline. Defendants' answer denies generally, and alleges contributory negligence. Verdict of the jury was for defendants. The words "Not Guilty" were added by the jury to the typed part of the verdict. Motion for new trial was made, and was denied. Appellant built his carport in about 1953 and then moved the drum, which had been outside, into a corner of the carport. He did not consult anyone about the location of the drum. The drum was located about 12 feet from a gas heater which had an open pilot light. The heater was in a breezeway which was separated from the carport by a door, which had been closed when each gasoline delivery was made during the four and a half years, the period in which Spomer, the Seaside driver, had serviced the Whited

gasoline supply, but which was open for the first time on the day when the fire occurred, which was a very warm day. Plaintiff never had told Spomer of the location of the heater, Spomer had not inspected the home nor asked about the location of appliances, nor did he look into the breezeway on the day of the fire. Plaintiff, in order to supply his own automobile with gasoline, would connect a 4-foot hose running from the spigot of the gas tank. The floor of the carport was gravel on top of dirt. Plaintiff supposed that the "regular amount" of drippage of oil and grease would be present. He testified he had not spilled gasoline onto the gravel.

On the day of the fire, Spomer drove his truck to plaintiff's carport. Spomer was wearing safety shoes. The truck was equipped with a static cable, and the hose was shielded to prevent static electricity. Spomer testified that the hose was in good condition and was not leaking. He did not smoke. He testified that gasoline was not spilled in the operation. He stood on a pile of firewood and a rototiller in order to reach the top of the drum, which was on a stand that had been built by plaintiff, and after inserting the nozzle into the drum, proceeded to fill it. The nozzle had to be triggered manually but was designed to close automatically when released. After he had pumped about 82 gallons into the drum, he shut it off and removed the nozzle, held it alongside his body, and looked into the drum to see how full it was. At this moment, he heard a "terrific swish" from behind and saw that he was completely surrounded by fire. He saw no flame around the spigot of the drum. He replaced the bung into the drum, and ran out of the carport. From the time of the swish, the flames continued. His general mode of operation on the day of the fire was the same as it had been once or twice a month during the four and a half year period preceding the fire.

Dr. Paul I. Kirk, a professor in the Department of Criminology of the University of California, who has investigated many fires as an expert, testified on behalf of plaintiff. In brief, his testimony is that a fire of the magnitude and character of that which had occurred must have been fed by a large quantity of gasoline. Dr. Kirk testified that it was possible that gasoline fumes traveled into the open pilot light, but that the steadily burning flames which were described by Spomer must have been fed by liquid gasoline in the carport. He testified that there was evidence of a leak in the natural gas pipeline leading to the heater, but that fire fed by natural gas would burn upward rather than along the ground.

Appellant contends: (1) that defendants were negligent as a matter of law; (2) that as a matter of law plaintiff was not guilty of contributory negligence; and (3) that the court erred in its instructions to the jury. As to the first of these propositions, it is appellant's argument that this is a res ipsa loquitur case, and that defendants have not rebutted the inference of negligence. As to the second proposition, appellant argues (a) that the doctrine of contributory negligence has no place in cases of injury to such things as buildings and machinery, and (b) that it could not be negligence for plaintiff to assume that his property would not be exposed to danger which could come to him only by a violation of duty by the defendants. On the third point, appellant argues that it was error to instruct the jury at all on the doctrine of contributory negligence, which is virtually the same argument as that relating to the possibility of the existence of contributory negligence in the case, because appellant does not complain of any defect in the form of the instructions on the subject; and he argues that certain instructions in respect of defendants' duties were improperly refused.

The verdict rendered by the jury was a general one and the court did not direct the jury to find upon particular questions of fact; wherefore (apart from the question of the claimed erroneous instructions), appellant, in order to succeed on this appeal, must demonstrate to us the merit of his points one and two, namely, that defendants were negligent as a matter of law, and that plaintiff was, as a matter of law, free from contributory negligence. We are of the opinion that not only has he failed to demonstrate the merit of both, but that he has failed to make such demonstration as to either of them.

1. *Were Defendants Negligent as a Matter of Law?*

No. Appellant was given the instructions which he requested on res ipsa loquitur. It is appellant's position that in the handling of gasoline, defendants were required to use great care. In this he is correct. (*Feeney* v. *Standard Oil Co.*, 58 Cal. App. 587 [209 P. 85].) ▮ Where a defendant is required to exercise great care and the doctrine of res ipsa loquitur is applied, defendant must show that he was not at fault. (*Burr* v. *Sherwin Williams Co.*, 42 Cal.2d 682, 689 [268 P.2d 1041].) Appellant argues that no such showing has been made by the defendants. We do not agree that the jury could not have made this conclusion. This is not a case in which defendants failed to give an explanation. Spomer testified at length about his

activities. There is nothing inherently incredible about his testimony, and the jury had a perfect right to believe him. In his argument to the jury, counsel for plaintiff minimized the subject of the starting of the fire, stating that it was what kept the fire going that was important. As to the sustained fire on the garage floor, since plaintiff testified that in the course of filling his automobile he did not spill gasoline in the gravel, and Spomer testified that he, Spomer, did not spill gasoline, the jury was free to arrive at its own conclusion. Moreover, the jury may have concluded, as defense counsel argued to them they should, that the fuel sustaining the fire was, in whole or in part, the leaking natural gas. ▉▉ Since the question of negligence is one of fact, the conclusion of the jury that a given act or omission did or did not constitute negligence may not be disturbed on appeal, if the evidence upon the issue is such as to allow a difference of opinion among reasonable minds. The res ipsa loquitur doctrine does not abrogate this rule. (*Danner* v. *Atkins,* 47 Cal.2d 327, 332 [303 P.2d 724]; *Hinds* v. *Wheadon,* 67 Cal.App.2d 456, 465 [154 P.2d 720]; *Kohl* v. *Disneyland, Inc.,* 201 Cal.App.2d 780 [20 Cal.Rptr. 367].)

▉▉ In respect of the issue of negligence, appellant argues that the words "Not Guilty" appended to the verdict indicate that the jury was led to believe, from an argument of defense counsel to the effect that saturating the carport with gasoline to the extent compatible with plaintiff's theory would be criminal negligence, that proof of crime was essential to plaintiff's cause. Plaintiff made no motion to correct the verdict. In *Ambrose* v. *Allen,* 113 Cal.App. 107, 117, 118 [289 P. 169], the jury did the very same thing, and it was held that the words "not guilty" were mere surplusage, and that the time to attack the form was when the verdict was rendered.

2. *Was Plaintiff Free From Contributory Negligence as a Matter of Law?*

No. Appellant argues that contributory negligence has no place in a property damage case, citing *Kleinclaus* v. *Marin Realty Co.,* 94 Cal.App.2d 733 [211 P.2d 582], and *Atlas Assur. Co.* v. *State of California,* 102 Cal.App.2d 789 [229 P.2d 13]. These cases do not stand for so broad a proposition, but hold that a property owner is not obliged to anticipate an invasion of his property (in the *Kleinclaus* case by wrongful flooding of his land, and in the *Atlas* case by negligent collision by a freight car with an electric power pole), and to take precautions against such tortious acts of others. In the case before

us, defendants were invited upon the property of plaintiff and plaintiff participated, by his placing of the drum, in the operation.

Plaintiff's participation is cogently discussed by the trial judge in his memorandum accompanying the order denying motion for new trial, as follows: "The record will disclose that it was plaintiff, DOUGLAS WHITED, who requested that the gasoline drum be placed in the breezeway for his convenience; that it was formerly located a safe distance away from the house; that the day in question was an unusually warm day which increases the presence of gasoline vapors; that the breezeway door was open, exposing the pilot light in the water heater to the gasoline vapors. Plaintiffs' expert testified that the exposed pilot light could have ignited the vapors which produced the fire. The jury was entitled to consider these facts in connection with the defense of contributory negligence." That the placing of the drum at an unsafe distance from the heater may be contributory negligence was recognized in *Signorelli* v. *Potter*, 43 Cal.2d 541, 544, 545 [275 P.2d 449].

3. *Was There Prejudicial Error in Refusing Certain Instructions Proposed by Appellant?*

No. Appellant complains of the refusal of the trial court to give the following instructions which were offered by him: "Gasoline is an inherently and highly dangerous commodity. When it escapes, it is inflammable, explosive and highly volatile. In view of the inherently dangerous nature of gasoline, those who control it must use the utmost care to prevent its escaping." "The degree of care required of persons having possession of dangerous explosives, such as escaped gasoline vapors, is greater than that of persons handling harmless substances. In the case of explosives the highest degree of care must be exercised, and the utmost caution used to the end that they will not cause injury or damage." These instructions seem correct, but the jury was adequately instructed by a series of instructions, which appear in the footnote.[1]

---

[1] "A distributor of gasoline has a duty of safely keeping the gasoline. This duty is continuous from the time it is received by the distributor until it is safely delivered to the customer."

[2] "Distributors of gasoline should possess technical knowledge of the dangers to be guarded against in handling gasoline beyond the knowledge possessed by the average person. They have a duty to make some inquiry or investigation such as an ordinary prudent gasoline distributor would make that there does not exist conditions which would make the delivery of gasoline hazardous, and must take precautions

It will be observed that instruction [1] contained in the footnote virtually imposes an absolute duty upon defendants and may have been a stronger instruction than appellant was entitled to, because appellant concedes that absolute liability such as exists in ultrahazardous activities is not present in this case. Appellant argues that this instruction referred to delivery and did not include a duty of defendants to inspect the premises. Appellant's interpretation of this instruction, which was given in the form in which he offered it, probably is too narrow, in view of its broad terms; anyway, neither of the refused instructions makes reference to a duty to inspect. Specific reference to such duty is made in given instruction [2] in the footnote.

Judgment affirmed.

Draper, P. J., and Salsman, J., concurred.

according to the circumstances known to them or which might have become known to them upon reasonable inquiry or investigation.''

[3] ''A distributor of gasoline is required to use that degree of care commensurate with the dangerous character of the instrumentality with which he deals, and he is liable for any damage due to his failure to exercise such care while it is under his control.''

[4] ''Gasoline is a highly inflammable and volatile substance. Gas generated therefrom is a dangerous explosive. A distributor who handles and delivers gasoline is chargeable with knowledge of these facts.''

[5] ''Where a distributor of gasoline fails to exercise due care, as defined in these instructions, in the handling and sale of petroleum products, such as gasoline, he is liable for damage, if any, caused by a fire which resulted from a failure to exercise due care.''

[6] ''If you find that the defendant Spomer accidentally spilled gasoline upon plaintiffs' property while in his charge, he owed a duty to them of making reasonable effort to remove the gasoline in order to prevent damage.''

[7] ''Plaintiffs had a right to assume that due care would be exercised in the conduct of defendant Spomer's business.''

[8] ''A dealer in gasoline is under a duty to act reasonably for the protection of the property of the person to whom he sells and delivers gasoline.''