[S. F. No. 13382. In Bank.—January 30, 1931.]

E. C. WEDDLE, Respondent, v. F. E. HEATH, Appellant.

Clark, Nichols & Eltse for Appellant.

Ford, Johnson & Bourquin, Frank J. Creede and Gordon S. Keith for Respondent.

PRESTON, J.—This is an action for damages for personal injuries received by plaintiff by coming into contact with a rapidly moving endless belt running on revolving pulleys, a part of certain pumping machinery located on the lands of defendant. Plaintiff had a verdict for $15,000, followed by judgment in said sum, from which defendant has appealed on a bill of exceptions.

The amended complaint is in six counts, all having for their basis the charge of negligence in that defendant failed to properly guard the said pumping machinery or, putting it in another form, that defendant failed to furnish a safe place in which plaintiff might perform his work in connection with the use of said pump for irrigation purposes. The first four causes of action set forth in the complaint count upon the relation of master and servant between defendant and plaintiff; the remaining counts rest upon the relation of invitor and invitee between the same parties. It will be observed that under the relation of employer and employee, the rule of damages and negligence is modified by the so-called Roseberry Act (Stats. 1911, p. 796), the first section of which, so far as here material, is as follows:

"In any action to recover damages for a personal injury sustained . . . by an employee while engaged in the line of his duty or the course of his employment as such, . . . in which recovery is sought upon the ground of want of ordinary or reasonable care of the employer . . . the fact that such employee may have been guilty of contributory negligence shall not bar a recovery therein where his contributory negligence was slight and that of the employer was gross, in comparison . . . and it shall be conclusively presumed that such employee was not guilty of contributory negligence . . . where the violation of any statute enacted for the safety of employees contributed to such employee's injury; and it shall not be a defense: (1) That the employee either expressly or impliedly assumed the risk of the hazard complained of. (2) That the injury . . . was caused in whole or in part by the want of ordinary or reasonable care of a fellow servant."

Under the relation of invitor and invitee, it is conceded that ordinary common-law rules of negligence and contribu-

tory negligence obtain. The differences between these two sets of causes of action are important in the discussion of many serious questions urged by defendant and appellant, which said questions may be summarized as follows:

(1) That the relation of employer and employee did not exist between the defendant and plaintiff, but instead that the plaintiff was the employee of the brother of defendant who, as an independent contractor, had charge of the premises upon which the pumping machinery which caused plaintiff's injuries was located.

(2) That, conceding that plaintiff was an invitee on defendant's premises, defendant is not liable as any danger there encountered by plaintiff was obvious and moreover was well known to and appreciated by him.

(3) That in any event, plaintiff's own negligence defeats the cause of action resting upon the foundation of invitee and likewise the cause of action resting upon the foundation of employee, in that the alleged contributory negligence of plaintiff was so gross as to overcome in comparison any negligence of any kind on the part of defendant.

(4) That plaintiff released defendant's brother from the cause of action in suit and from any standpoint defendant and his brother were joint tort-feasors and the release of the one summarily released the other.

(5) Defendant also complains of numerous instructions, some of which are to be hereinafter mentioned.

(6) Lastly, defendant makes complaint of certain rulings of the court during the progress of the trial.

We are not required to consider all of these questions as the course of the appeal will be determined short of this full task. The facts out of which the causes of action arose may now be set out more fully.

Plaintiff, then a man of about twenty-eight years of age, experienced since the age of about thirteen in the use of machinery similar to that in question, and familiar for several years with the specific machinery in question, was injured, as above noted, on July 14, 1926, by coming in contact with a moving belt, a portion of certain pumping machinery. The evidence fails to show with any great degree of certainty just how the accident occurred. It is, however, shown that on the day in question plaintiff had

been left in charge of the ranch and of the pump used to irrigate the orange orchard thereon. He had shut the machinery down just prior to the injury and had oiled the pump and, after starting the motor, had observed that everything was in its usual ordinary working condition except that after starting it again he heard what he thought was a squeak in a bearing inclosed in boxing and resting upon a cement pier. While standing in front of the wheel carrying the belt, he thinks he stooped over to listen for this noise and may have put his hand on the covering over the bearing. In turning either to the left or to the right, he does not recall which, he remembers nothing further as to what happened except that he was found a distance of some eight feet from this position badly injured in the arm and he had evidently been unconscious for an unknown period of time. He was wearing a shirt with the sleeves rolled up rather loosely. An examination of the machinery after the accident disclosed that shreds of his shirt were embedded in the belt and also on the boxing inclosing the said bearing and he found the right sleeve torn in shreds up to the neck of the garment. From these facts it is easily deducible that plaintiff unintentionally came in contact with the moving belt and was probably thrown against the pulley, resulting in his being hurled some eight feet to the place where he found himself upon regaining consciousness. It is useless to recount the injuries received by him except to say that they were serious and permanent, resulting, among other things, in practically the entire loss of use of his right arm.

The pump was electrically driven and was located in a house on a north and south line therein, being nearer the westerly than the easterly wall thereof. Plaintiff was injured at the northwest end, but there was a reasonable amount of space for him to stand or move about the place where he was injured, without contact with the belt or machinery. It is true that the machinery was not guarded by a rail, housing or any other method but plaintiff, as above noted, was well acquainted with it and with dangers incident thereto. He offers as an excuse for his injury that he thought he was standing a safe distance from the endless belt. Plaintiff, over objection of appellant, introduced certain safety orders of the Industrial Accident Commission,

450

which showed that such regulations, if applicable, would have necessitated the installation of a guard or protection of some other kind on this machinery. Expert evidence along the same line was also admitted over objection.

The relation between defendant and his brother was as follows: Defendant F. E. Heath, about the year 1921, owned certain orange grove lands near Lindsay, California. At that time he induced his brother, who was then residing in Michigan, to come and reside upon one of the tracts of land. Accordingly, about 1922, defendant's brother, L. W. Heath, established a residence upon one of said tracts and he and defendant entered into a contract whereby for $50 per acre per annum he would cultivate, irrigate and sucker said orange groves and, as defendant sold portions of the tract or added others, the brother's contract was to contract or expand accordingly. The place where the injury occurred was known as the Decker place, which defendant acquired some years prior to 1926. This arrangement between the brothers had obtained as to management of the ranch for some time prior to the date of the accident and during all the times in question. The fertilizing of the soil, spraying of the trees and picking of the fruit were not covered by the contract between defendant and his brother but this work too was superintended by the brother. Over a period of years plaintiff had frequently been engaged and paid by the brother to work upon various properties owned by defendant and had worked in the various departments of the labor thereon.

For several years plaintiff had been employed at various times by the brother to work at the place in question. Likewise he had over a period of years been assisting in the use of said pumping machinery for the irrigation of said properties. He had used the pump when it was driven by gasoline and later when it was driven by electricity. He was as familiar with the pump as the brothers themselves. Just prior to the accident the brother had returned to his former home in Michigan on business and had left plaintiff in charge of the said ranch and said pump and it was while using the pump under the above agreement that the accident occurred. Plaintiff was paid invariably with the check of the brother and never by the check of defendant. During the

absence of the brother in Michigan and during the period plaintiff was in charge of the property, defendant visited it at one time to inspect conditions on the ranch. When plaintiff received said injuries, he incurred a doctor's bill of some $325, which the brother paid and the brother also sent plaintiff in cash the sum of $50. The exact date when the original complaint was filed does not appear in the record but it is evidence that plaintiff started the action prior to June 6, 1927, and that he included as defendants certain fictitious names. He approached the brother with the idea of causing summons to be served upon him as a co-defendant in the action in lieu of one of said fictitious persons, whereupon the brother caused his attorney to prepare and plaintiff executed without further consideration than the items above mentioned, the following release:

"The undersigned, for and in consideration of the sum of three hundred seventy-five dollars ($375.00), does hereby release, cancel, discharge and satisfy all claims, demands, charges, sums due for any money or demands whatsoever, either for damages accruing or heretofore accrued or claimed to have accrued in favor of the undersigned and I do bind my heirs, executors and administrators by these presents. The purpose of this agreement is to show my good faith in relieving Louis W. Heath from any and all liability by reason of any damage heretofore suffered which I realize he is not responsible for.

"Executed at Lindsay, California, June 6, 1927.

"E. C. WEDDLE."

The court instructed the jury on both theories of plaintiff's causes of action and gave two instructions at the request of plaintiff denominated numbers nine and twenty-nine, to which strenuous exception is made. One of these instructions will be made the subject of discussion hereafter.

The contention that, under the evidence, plaintiff as a matter of law, was not the employee of defendant but was the employee of the independent contractor, the brother, we are not required to resolve on appeal as upon other grounds the case must be reversed. Defendant, of course, admits that plaintiff was an invitee upon his premises but contends that the danger to which he was exposed was an obvious one,

which position we think must be sustained. The rule in this respect is well stated in the case of *Shanley* v. *American Olive Co.*, 185 Cal. 552, 555 [197 Pac. 793, 794], where the court says: "A person so invited upon the premises of another may recover from such owner 'for any injuries received owing to the dangerous condition of the premises known' to the owner and not known to the person so invited; but such owner 'is not bound to keep his premises absolutely safe' (29 Cyc. 453). The responsibility of such owner for the safety of such person in such a case is not absolute; he is only required to use ordinary care for the safety of the persons he invites to come upon the premises. If there is a danger attending upon such entry, or upon the work which the person invited is to do thereon, and such danger arises from causes or conditions not readily apparent to the eye, it is the duty of the owner to give such person reasonable notice or warning of such danger. But such owner is entitled to assume that such invitee will perceive that which would be obvious to him upon the ordinary use of his own senses. He is not required to give to the invitee notice or warning of an obvious danger. (29 Cyc. 471, 474; 26 Cyc. 1213.)" See, also, *Dobbie* v. *Pacific etc. Co.*, 95 Cal. App. 781 [273 Pac. 630]; 15 Cal. Jur. 1058.

Plaintiff not only fails to satisfactorily explain the accident but also admits that the danger to which he was exposed was obvious, justifying himself only by the statement that he thought he was a safe distance from the belt; therefore, we conclude that the evidence fails to sustain the causes of action predicated upon the theory of invitor and invitee and for this reason it was error to submit this issue to the jury. On the same facts it necessarily follows that the plaintiff was guilty of contributory negligence. (*Ergo* v. *Merced Falls etc. Co.*, 161 Cal. 334, 339 [41 L. R. A. (N. S.) 79, 119 Pac. 101]; *Brett* v. *Frank & Co.*, 153 Cal. 267, 274 [94 Pac. 1051]. Whether this negligence of plaintiff was slight in comparison with the negligence, if any, of the defendant need not at this time be determined inasmuch as the facts may differ on a retrial of the cause.

It is here appropriate to discuss plaintiff's instruction number nine, reading as follows: "You are instructed that the statute law of this state makes it unlawful for any

employer to require, permit or suffer any employee to go or
be in any employment or place of employment which is not
safe, and no such employer shall fail to furnish, provide and
use safety devices and safeguards or fail to adopt and use
methods and processes reasonably adequate to render such
employment and place of employment safe, and no such
employer shall fail or neglect to do every other thing rea-
sonably necessary to protect the life and safety of such
employees, and no such employer shall occupy or maintain
any place of employment that is not safe; and the statute
referred to in this instruction was enacted for the safety of
employees, and in this connection I charge you that if you
find that defendant Frank E. Heath was the employer of
E. C. Weddle and was violating such statute law at the time
and place that said E. C. Weddle was injured, and you
further find from the evidence that such violation of such
statute proximately caused the injuries described in the
complaint to the said E. C. Weddle, then and in that event
the law conclusively presumes that said E. C. Weddle was
not guilty of contributory negligence and you must so find.''

It is manifest that this instruction is intended to apply
that portion of section 1 of the Roseberry Act, relating
to a violation of a statute providing for the safety of em-
ployees, to sections 34 and 35 of the Workmen's Compensa-
tion Act, which provide generally that the employer may
not allow the employee to be in a place of employment which
is not safe, but must furnish for the use of the employee
safety devices and safeguards and must adopt all methods
and processes reasonably adequate to make the place of em-
ployment safe and must do every other thing reasonably
necessary to protect the life and safety of the employee.
The instruction does not set forth any specific requirement
of any section of the law that might be here involved. It
simply leaves the question to the jury as to whether or not
the defendant did everything reasonably necessary to protect
the life and safety of his employees or, putting it in other
language, the defendant is denied the right to rely to any
extent upon the contributory negligence of the plaintiff if
the jury believed, for any cause, known or unknown, that
the place where the plaintiff performed his work was unsafe.

We cannot come to any other conclusion than that the

giving of this instruction was serious and far-reaching .error.
■ The Workmen's Compensation Act followed and did not precede the Roseberry Act and its provisions are largely a restatement of the general common-law principles applicable to the law of negligence. It has always been the duty of the employer to exercise ordinary care in providing a safe place for the servant to work and in providing all reasonable safeguards for him while engaged in such work. These sections of the Workmen's Compensation Act do little more than codify said principles. We think it must be held that the provisions of section 1 of the Roseberry Act are intended to apply to concrete and specific requirements set forth by statute entailing specific duties upon an employer. Any other construction would for all practical purposes destroy the right to rely to any extent upon the contributory negligence of the servant. No specific construction of this act has been made, but the question is inferentially discussed in *Frinier* v. *C. J. Kubach Co.*, 177 Cal. 722, 726 [171 Pac. 952].

■ We are next to examine the so-called release executed by plaintiff to L. W. Heath and set out above. If the release is valid as to L. W. Heath and he and the defendant are joint tort-feasors, it is clear that such release is binding on plaintiff until avoided upon some ground authorized by law for the rescission of a written instrument. In this connection, the court instructed the jury as follows: "I instruct you that if you believe from the evidence that the instrument offered by F. E. Heath as a release in his favor from the plaintiff, was not supported by a valid consideration, then and in that event said purported release is not a bar to the plaintiff's action or a defense available to the defendant F. E. Heath."

■ It must be admitted that if the said L. W. Heath was an independent contractor on the property of F. E. Heath, he owed plaintiff, his employee, at least the same if not greater duty than the defendant to guard and protect the machinery in question. We think also that even if the relation between the two brothers was only that of master and servant that in this particular case at least it was L. W. Heath's duty in any event to provide a safe place for the plaintiff to work. It is not always true that master

and servant are joint tort-feasors where a tort is committed, but that may well be their relation and it is where they both participate in the commission of the tort. The rule is stated in *Gosliner* v. *Briones,* 187 Cal. 557, 563 [204 Pac. 19, 22], as follows: "In the prosecution of actions for causes *ex delicto* all persons concerned in the commission of the tort may be joined as defendants, or either or any of them may be sued severally, and where an employer and an employee have participated in a tortious act against a third person, they may be jointly sued for damages. (*Rogers* v. *Ponet,* 21 Cal. App. 577, 581 [132 Pac. 851].)"

But if either of the above propositions is sound, then the release becomes a material factor in this case, at least when weighing the above instruction given by the court. ▆ We then first inquire: Was the giving of the instruction that a consideration was required for said instrument, error? If section 1541 of the Civil Code is to be respected, it must be so held. Said section reads: "An obligation is extinguished by a release therefrom given to the debtor by the creditor, upon a new consideration, or in writing, with or without new consideration." Said section was taken from section 741 of the Field Draft of the New York Civil Code reading as follows: "An obligation is extinguished by a release therefrom given to the debtor by the creditor, upon a new consideration, or under seal." The code commissioner's note recommending its adoption reads as follows: "A release under seal extinguishes the debt, notwithstanding the provision of the Revised Statutes allowing the want of consideration for a sealed instrument to be shown (*Stearns* v. *Tappin,* 5 Duer (N. Y.), 294). But by the present law, a release, with neither a seal nor a new consideration, is void (*Von Gerhard* v. *Lighte,* 13 Abb. Pr. (N. Y.) 101; *Seymour* v. *Minturn,* 17 Johns. (N. Y.) 169 [8 Am. Dec. 380]; *Dewey* v. *Derby,* 20 Johns. (N. Y.) 462; *Jackson* v. *Stackhouse,* 1 Cow. (N. Y.) 122 [13 Am. Dec. 514]). The justice of its restrictions may well be doubted. The commissioners recommend the substitution of the words 'in writing' for 'under seal'."

When our state adopted the section we apparently accepted it by putting in effect substantially the suggested amendment of the New York code commissioner. It has

several times been clearly intimated that a consideration is not necessary where the writing is plain and explicit and given for the express purpose of effecting a complete release of the obligation. (*Upper San Joaquin Canal Co.* v. *Roach,* 78 Cal. 552 [21 Pac. 354]; *Rogers* v. *Kimball,* 121 Cal. 247, 253, 254 [53 Pac. 648].) The department opinion in the latter case is found in 5 Cal. Unrep., pp. 725, 731 [49 Pac. 719, 721], where it is said: ''This section gives to a release 'in writing' the same effect as was given at common law to a release under seal, which is in general valid without reference to the consideration.'' See, also, *Jordan* v. *Scott,* 38 Cal. App. 739, 742 [177 Pac. 504].

█ Further considering the release in question, we cannot but say that plaintiff is estopped by his own deliberate act to deny that the $375 received by him was a proper consideration therefor although there is evidence which supports the view that the doctor's bill was a voluntary gift, but in reality the action of the brother was an attempt to compensate the plaintiff without admitting liability to him. This being true and the claim being unliquidated, notice of rescission together wth a tender back of the amount received would be indispensable prerequisites to a successful showing that by mutual mistake or upon other grounds the release should be rescinded. (*Garcia* v. *California Truck Co.,* 183 Cal. 767 [192 Pac. 708]; *Winstanley* v. *Ackerman,* (Cal. App.) 294 Pac. 449.)

Discussion of many other assignments might be had, but we deem the above sufficient.

The judgment is reversed.

Richards, J., Seawell, J., Shenk, J., Curtis, J., Langdon, J., and Waste, C. J., concurred.

Rehearing denied.