[Civ. No. 6284. Third Appellate District.—July 5, 1940.]

THOMAS J. FUNARI, Appellant, v. GRAVEM-INGLIS BAKING COMPANY (a Corporation), Respondent.

Levinsky & Jones, Gilbert L. Jones, J. J. Miller and Wm. H. Woodward for Appellant.

Honey & Mayall for Respondent.

HAWKINS, J., *pro tem.*—Appellant appeals from a judgment *non obstante veredicto*, following a jury's verdict awarding damages for personal injuries to appellant.

The essential facts are:

Appellant and one Nelson were employees of Overland Transfer Company. On the day appellant was injured they received orders from their employers to deliver a truck load of sugar to the plant of respondent at Stockton. They loaded the truck with about one hundred sacks of sugar, proceeded to said plant and backed the truck up to the curb, opposite the door to the freight elevator which was the receiving entrance.

At said time appellant was twenty-five years old and had been working at truck driving, stevedoring and other heavy manual labor since he was sixteen. He had been employed by said Overland Transfer Company off and on for two years. Both appellant and Nelson had delivered sugar and flour at the plant on other occasions and were entirely familiar with the premises and in particular with the operation of said elevator. This elevator was maintained by respondent for the use of tradesmen delivering goods, was ordinarily operated by them, and was controlled by pulling on a cable which was exposed throughout the length of the shaft. There was no evidence that respondent operated said elevator at any time on the day appellant was injured.

It was about twelve feet across the sidewalk from the truck to the door of the elevator. The elevator was so small that a man wheeling a hand truck had to back into it so he could "break down" the truck to take the merchandise out of the other side on the second floor, where said merchandise was stored.

Between the elevator and the entrance door was a sliding guard gate, made of iron and heavy wire, which automatically slid down as the elevator rose, and rose as the elevator came down. There was no warning signal of any kind on the elevator. There was a bell button but it was not connected and appellant had observed that fact on all occasions when he used the elevator. Appellant and Nelson gave warning of the starting of the elevator by "hollering" up and down the shaft.

Appellant and Nelson arrived at said plant about 9 o'clock in the morning. There was a very wet, dripping fog. They

noticed a lot of wet flour on the sidewalk and marks where people had slipped and fallen recently. They loaded one hand truck with sugar and Nelson started to move it, but slipped and fell immediately. Appellant then entered the building and consulted the man with whom they usually dealt when delivering merchandise and asked for some sawdust to put on the sidewalk. He replied, ''This is a bakery, and not a saw mill'', but got a bucket of warm water and a broom, went out and washed off a path in the sidewalk from the truck to the elevator door. After that they did not again slip on the sidewalk.

The elevator floor was dry when they started unloading except for a wet spot near the front, which they covered with a sack. The floor of the elevator had always been slippery, even when dry, and this fact was known to both appellant and Nelson. They observed that there was flour on the elevator floor.

Appellant first went upstairs to the second floor while Nelson started hauling sugar to the elevator in the hand truck, taking six one-hundred-pound sacks to the load. As Nelson worked, he carried more or less water into the elevator on his shoes and on the wheels of the hand truck. From time to time he conversed with plaintiff up the elevator shaft. He slipped and fell twice at intervals on the floor of the elevator, bruising himself but sustaining no serious injury.

At the second fall, plaintiff, who was a much stronger man physically than Nelson, called down the shaft and said he (plaintiff) would come down and relieve him, and he did so immediately. Plaintiff and Nelson had discussed the slippery condition of the elevator floor even before the first load was hauled. Nelson went upstairs and plaintiff proceeded with the loading. He sent up several loads without mishap, then, while exerting considerable extra force to lift the hand truck over an elevated threshold, both feet slipped out from under him and he fell backwards, striking his head and shoulders against a door on the far side of the elevator and his back on a projecting wooden ''lip'' on the bakeshop door at the base of said door. The truck loaded with sugar fell on top of him.

Plaintiff immediately lost consciousness but after a short time regained consciousness but could remember but little of

what had happened prior to the time he was taken to the hospital.

Nelson proceeded with the work alone. When he had about finished, plaintiff, while apparently trying to help him with the work, backed into the elevator without looking, but after some unknown person had started it from the second floor. The guard gate heretofore mentioned came down and struck him a blow on the head. He staggered onto the sidewalk, but did not fall.

Plaintiff has never at any time had any recollection of this second accident or the events leading up to it. Plaintiff did not suffer any fracture or other permanent injury from the blow on the head. His only permanent injury was to his back which resulted from his fall on the elevator floor.

There are two questions to be determined on this appeal:

(1) Is there any substantial evidence to show that respondent failed to exercise the degree of care which the law requires for the protection of invitees?

(2) Was the plaintiff guilty of contributory negligence as a matter of law?

The first question must be answered in the negative.

■ It is true, as urged by appellant, that in determining whether or not a judgment *non obstante veredicto* should be granted, courts are to be guided by the same rules which apply to nonsuits and directed verdicts. It is also true that a judgment *non obstante veredicto* should not be granted when there is any substantial evidence, which, with the aid of all legitimate inferences favorable to plaintiff, would support the verdict of the jury. (Sec. 629, Code Civ. Proc.; *Long* v. *John Breuner Co.*, 36 Cal. App. 630 [172 Pac. 1132].)

■ But appellant was an invitee on the premises of respondent, whose duty it was, therefore, to exercise only ordinary care. Appellant had equal, if not superior, knowledge of the dangerous conditions which brought about his injuries. The danger was obvious and respondent was ''entitled to assume that such invitee will perceive that which would be obvious to him upon the ordinary use of his own senses''. (*Weddle* v. *Heath,* 211 Cal. 445, at 452 [295 Pac. 832]; *Mautino* v. *Sutter Hospital Assn.,* 211 Cal. 556 [296 Pac. 76]; *Sylvia* v. *Mellema,* 17 Cal. App. (2d) 728 [62 Pac. (2d) 746]; *Blodgett* v. *B. H. Dyas Co.,* 4 Cal. (2d) 511 [50 Pac. (2d) 801]; *Vitrano* v. *Westgate Sea Products Co.,* 34 Cal. App. (2d) 462 [93 Pac. (2d) 832].)

There is no substantial conflict in the evidence upon the question of the negligence of respondent or the contributory negligence of appellant. Under the facts of this case and the authorities cited, respondent was not guilty of any actionable negligence.

The second question is answered in the affirmative.

■ All testimony relative to the alleged negligence of respondent and the contributory negligence of appellant came, without contradiction, from the lips of appellant and his own witnesses, under circumstances which afforded no indication that the testimony was the result of mistake or inadvertence. Therefore, the presumption that appellant exercised ordinary care, which under some circumstances might be relied upon to produce a conflict in the evidence, is dispelled and has disappeared from the case. (*Mar Shee* v. *Maryland Assur. Corp.*, 190 Cal. 1 [210 Pac. 269] ; *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 Pac. 529].)

From the uncontradicted evidence in the instant case, we are led to the conclusion that appellant assumed the risk and was guilty of contributory negligence as a matter of law.

■ Appellant asserts that the principles of law hereinbefore stated cannot be applied to the "second accident" in which appellant received the blow on the head from the descending guard gate. This position is not tenable. Under the rule enunciated in *Weddle* v. *Heath, supra,* if appellant was in possession of his faculties at the time, he should have made use of those faculties and perceived the obvious danger of the moving elevator before he attempted to enter it. If, as he testified, he was practically unconscious, his second injury was a direct and continuing result of his first injury and all questions of negligence would relate back to the time of said injury.

The judgment is affirmed.

Tuttle, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 3, 1940, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 29, 1940.