[Civ. No. 15051.   First Dist., Div. One.   May 9, 1952.]

OLIVER WATSON FLETTER, Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Respondent.

Emmett R. Burns, Arthur C. Zief and Rinaldo A. Carmazzi for Appellant.

Dion R. Holm, City Attorney, Lawrence S. Mana and Donald Kropp, Deputy City Attorneys, for Respondent.

BRAY, J.—Action for damages for personal injuries. The jury rendered a verdict in favor of plaintiff for $4,000. From a judgment for defendant notwithstanding the verdict, plaintiff appeals.

## QUESTION PRESENTED

Although the question as to the liability of a landlord towards the employee of a tenant is raised, the main question is whether plaintiff was contributively negligent as a matter of law.

## FACTS

Defendant owns the Memorial Opera House. The San Francisco Opera Association had entered into a lease, in writing, with defendant under which the tenant was to have the occupancy of the house for the presentation of the Ballet Russe de Monte Carlo. Plaintiff, a stagehand, was employed by the tenant and was engaged in the "loading out" of the show after the completion of its final performance. During the performance plaintiff had worked on the stage and was thereafter assigned by the tenant to go down into the basement and remove the trunks and crates from the dressing rooms. Defendant had nothing to do with this operation, it being directed by the stage manager of the ballet and carried out by employees of the tenant, including plaintiff. At the time of the accident, plaintiff was engaged in moving with a hand truck the costume crates and trunks from the dressing rooms to a type of elevator called lifts, bridges or risers. They are used mainly for scenic or choral effects on the stage. In an area of approximately 52 feet by 22 in the basement, there are four of these lifts. They are 52 feet long, about 4 feet wide and are separated by a narrow open space about 16 inches in width and several feet deep. This space is unguarded. These lifts may be visualized as narrow platforms which can be raised, and which are separated from each other by this narrow space. The area of the four lifts is lighted by only two lights. There are columns and beams which support the stage surrounding the lifts, and steam pipes under the lights, all of which cast shadows. The lifts were piled with trunks and crates, and chairs left by the San Francisco Symphony Orchestra, casting shadows, and thereby the lighting was further reduced. About 10 days prior plaintiff had been in the basement bringing trunks and crates in but used only the freight elevators and had not used the lifts. This night plaintiff was working on the number 3 or 4 lift. He

had made eight trips from the dressing rooms to the lift, trucking trunks and crates. Immediately before the accident he left his hand truck "behind on the main body of the platform and walked out onto the lift to push the trunks and crates together." When he went back to get it, trunks brought there by other men blocked the end of the lift so he could not get back to his truck. As he was standing on the lift he saw another hand truck on an adjoining lift. In his direct examination he states what then happened: "Well, I reached across to the adjoining lift to get a small truck, and with that I fell in the opening. Q. Now, prior to your falling into this opening, did you have any cognizance of the fact that this opening was there? A. I knew it was there, yes. Mr. Carroll [counsel for defendant]: May I have that answer, your Honor? The Witness: I knew it was there, Mr. Carroll. . . . Mr. Zief [counsel for plaintiff]: Q. As you were going over and reaching over this elevator, this adjoining elevator, to pick up this truck, at that time did you know that there was—realize that there was an opening there, that there was this drop down? A. Yes. Q. Did you know that it was unguarded? A. Yes. Q. You knew that there wasn't any screen or anything in between, is that true? A. Yes. Q. Now, will you tell the jury what happened as you reached across to get the other hand truck? A. Well, I fell in between the two lifts . . ." He caught his weight by his two hands, one resting on one lift and one on the other, and held himself from dropping to the bottom of the space until he was rescued. He suffered severe ankle, arm and shoulder injuries. Again, plaintiff stated: "Q. Now, when you stepped over to reach for this, did you realize that you were stepping at that time into an opening? A. No. I thought I was stepping on the other lift. . . . Well, as I reached over to get this other truck, I fell in between the two lifts, and grabbed either side of the two lifts." On cross-examination he testified: "Q. I will ask you one question about your accident, Mr. Fletter: It is true, isn't it, that you didn't slip or you didn't trip or you didn't fall, you just walked into this space, isn't that true. A. I fell into it, yes. Q. Isn't it true you just walked into it? Maybe I will make that simpler for her. I will withdraw it. Isn't it true you just stepped into this open space? A. Yes, fell into it. . . . Q. Isn't it true that you stepped into this open space, Mr. Fletter? A. Yes sir." On redirect examination he was asked if at any time before the accident he ever examined the spaces between the lifts. "The Court: Do you

mean look down into them? The Witness: No, sir, I never did." He then said that he did not know how deep the openings were, and then: "The Court: By saying you never looked down in them, you don't mean in passing you never looked down in them, you didn't get down on your knees and look down? The Witness: I never looked down at all, your Honor. I was trucking on there with my hand trucks, I was watching the wheels to keep it on the lifts. The Court: But I understood from your prior testimony you knew those openings were there? The Witness: From passing. The Court: From passing, that is true, is it not? The Witness: Yes. . . . A. Well, in trucking back and forth I noticed that in the center section there were steel beams in there, and in looking down like that I naturally saw the edges of the elevators. I didn't see any upright screens that a normal elevator has at all, and I just was looking downward in trucking on and off. Q. Is that the time that you noticed that there was a space in between elevators, at the south end of the elevators, Mr. Fletter? A. The question, please? Q. Was that the time that you noticed there was a space in between the number 3 and 4 elevators at the south end? A. Yes." He testified that the costume crates which he had trucked onto the lift were about 3½ feet wide and that some of the trunks were possibly 3 feet wide. He would truck the crates or trunks onto the lift, put the truck down, take the crate or trunk off, pull the truck back and turn around and wheel the truck back along the lift. He was aware that the lift was only about 4 feet wide. In his deposition he stated: "A. Well, I reached across to the adjoining lift to get a small truck and with that I fell in the opening. Q. Now, prior to your falling into this opening, did you have any cognizance of the fact that this opening was there? A. I knew it was there, yes. . . . Q. As you were going over to reach over this elevator that is adjoining your elevator to take up this truck, at that time did you know that there was—realize that there was an opening there, that there was this drop down? A. Yes. Q. Did you know that it was unguarded? A. Yes. Q. You knew there wasn't any screen or anything in between, is that true? A. Yes." He reaffirmed these statements on the stand.

## Contributory Negligence

It is obvious from the foregoing, which is all the testimony given by plaintiff himself as to the circumstances

of the fall, that plaintiff was contributively negligent as a matter of law. He had been trucking back and forth on a bridge approximately 4 feet wide trunks and crates which were almost as wide as the bridge itself. He had turned his hand truck several times on that bridge. He had noticed that on each side of this narrow pathway there were openings about 16 inches wide. His testimony is subject to only one interpretation, that knowing of the existence of the opening, he purposely stepped across for a hand truck, misjudged the distance, and fell into the opening. But at no time did he testify that the lighting prevented him from seeing, or that the dimness in any way obscured his vision. In one portion of his testimony he said that "it was rather a dull lighting." Likewise, there was testimony of other witnesses as to shadows and the fact that the lighting was poor. However, plaintiff did not say that the shadows or the dull lighting hampered his work, or interfered in any way with his seeing the openings or the edges of the openings either before or at the time of his fall. The jury was instructed that forgetfulness of a known danger will not always operate to prevent recovery by a person injured. But plaintiff at no time claimed that he had forgotten the opening. In fact his testimony shows that he remembered it and took his chances of crossing it. Therefore, he did not bring himself within the rule of *Davis v. Pacific Power Co.,* 107 Cal. 563 [40 P. 950, 48 Am.St.Rep. 156], where it was held that the question of whether a lapse of memory constituted negligence was one for the jury.

The plaintiff's own testimony as to the occurrence of the accident prevents the application of the rules set forth in *Neel v. Mannings, Inc.,* 19 Cal.2d 647 [122 P.2d 576], where the fact that the jury, as in our case, viewed the premises was given considerable weight and there was evidence that plaintiff momentarily forgot the dangerous situation when she stepped aside on a stairway to allow other persons to pass.

In considering judgments notwithstanding the verdict we are required to view the evidence and the reasonable inferences therefrom most strongly in plaintiff's favor. Applying such rule here, nevertheless we are required to hold that as a matter of law plaintiff was guilty of contributory negligence. Hence the trial .court did not err in disregarding the verdict of the jury.

## LIABILITY OF THE CITY

Plaintiff concedes that the general rule is that, in the absence of fraud or concealment, or covenant in the lease, the lessor is

not liable to the lessee or the latter's agents or employees, for injuries due to the defective or faulty construction of the demised premises, except where the defects are known to the lessor and he has reason to believe that the lessee will not discover them and the lessee does not know of the condition. (See *Hassell* v. *Denning*, 84 Cal.App. 479 [258 P. 426]; Rest., Torts, § 359.) Plaintiff also admits that he has been unable to find any authority applying the rule of liability of a landlord toward a patron of a semipublic place in the possession of a tenant,* to either the tenant or an employee of the tenant, but contends that such rule should be extended to the plaintiff because of the extremely short lease (it was for only six hours a day for 22 days, defendant having the right to lease the opera house to other tenants for the other 18 hours of the day); the retention of certain control, supervision and management by defendant over the leased premises; the clauses in the lease forbidding the tenant to make repairs or even to alter the premises in small details without the lessor's consent; the fact that the association had neither the time nor the money to make repairs of the type necessary to fill the openings between the lifts, and the fact that the landlord knew that the tenant would have several or many employees.

■ However, we do not deem it necessary to discuss this question for two reasons: (1) Assuming that there is a liability of a landlord to the employee of a tenant under the circumstances here, plaintiff cannot recover because of his contributory negligence; and (2) even where there is a liability of a landlord to a person injured on leased premises such as an invitee, where the dangerous condition complained of is an obvious one or as well known to the injured person as to the landlord, the former may not recover from the latter. (*Mautino* v. *Sutter Hospital Assn.*, 211 Cal. 556 [296 P. 76] (cited by plaintiff); *Vitrano* v. *Westgate Sea Products Co.*, 34 Cal.App. 2d 462 [93 P.2d 832]; *Funari* v. *Cravem-Inglis Baking Co.*, 40 Cal.App.2d 25 [104 P.2d 44].) Plaintiff's own testimony shows that the danger was an obvious one and one of which he knew at the very moment he was attempting to step across the danger point.

For the same reasons, it is unnecessary to consider plaintiff's

---

*For discussion of this rule, see 50 Harv.L.Rev., 741; 62 Harv.L.Rev., 669; 84 U. of Penn.L.Rev. 467; 100 U. of Penn.L.Rev., 629; *Oxford* v. *Leathe*, 165 Mass. 254 [43 N.E. 92]; Restatement, Torts, § 359, comment E.

contention that defendant was guilty of active negligence in allowing, as contended by plaintiff, the lifts to become cluttered so as to diminish the lighting.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied on June 7, 1952.