[Civ. No. 14957. Second Dist., Div. Three. Dec. 12, 1945.]

GENE GLOVER, Respondent, v. LOS ANGELES RAIL-
WAY CORPORATION (a Corporation), Appellant.

Gibson, Dunn & Crutcher and E. H. Chapman for Appellant.

Francis J. Gabel for Respondent.

188

SHINN, J.—Defendant prosecutes this appeal from a judgment pursuant to the verdict of a jury in an action for damages sustained by plaintiff, a pedestrian, in a collision with a motorbus of defendant.

The accident occurred about 6:15 p. m., December 12, 1943, as plaintiff was crossing San Julian Street in Los Angeles. It was almost dark and the headlights and inside lights of the bus were on. Plaintiff was walking easterly on the southerly sidewalk of Seventh Street and as he approached the intersection of San Julian Street the bus was standing at the south curb of Seventh, the front end of it being about 10 feet west of the westerly curb line of San Julian. Plaintiff was intending to continue across San Julian; the bus was to turn the corner to go south on San Julian, but plaintiff did not know this. There were no traffic signals at the corner. The driver of the bus did not see any pedestrians in the vicinity of the west curb of San Julian; he did not at any time observe plaintiff approaching and did not know an accident had occurred until a passenger called out. The bus was about 35 feet long; San Julian Street was 40 feet in width. Plaintiff stepped into San Julian Street and started to cross within an unmarked crosswalk. The bus swung around the corner and plaintiff came into contact with the right front wheel of it, which was about 6 feet 4 inches to the rear of the front of the bus. As the bus was making a sharp turn to the right, the front wheel was extended outward and plaintiff's leg was caught and jammed behind the wheel and severely injured. Counsel for defendant properly concede that there was sufficient evidence to support the implied finding that its driver was negligent. They earnestly insist, however, that the pleaded defense of contributory negligence was established by the proven circumstances of the accident and by plaintiff's own testimony which, it is contended, clearly showed that he failed to exercise ordinary care as he started across the street.

In the course of plaintiff's cross-examination he testified as follows: "Q. As you stepped from the curb into the street, did you look to your left? A. No; no more than maybe putting my eye over; I don't remember turning my head. Q. You don't remember looking to the left as you stepped from the curb to the street? A. No. Q. You would say you did not, then? A. I don't get it. Q. You say you did not look to the left? A. I would say I did not turn my head. Q. Do

you recall whether you looked to the left as you stepped off the curb into the street? A. No. I don't recall. Q. The next thing you knew you were in contact with some part of the bus? A. Yes." The quoted testimony, considered by itself, would make it appear that plaintiff took no precautions for his safety as he attempted to cross the street, but this conclusion does not necessarily result when the testimony is considered with the entire circumstances of the accident. Plaintiff also testified that he saw the bus as it was standing at the curb before he entered San Julian and that he was not certain, but that he must have taken four or five steps before coming into collision with it. He was 28 years of age and wore a patch over his left eye. A fact which the jury and the trial judge no doubt deemed to be of importance is that there is a jog in San Julian Street at Seventh Street, the south intersection being some distance west of the north intersection. Obviously it would not have been difficult for a pedestrian, situated as plaintiff was, to have a view of vehicles being driven across Seventh Street from the northerly to the southerly intersections of San Julian. The only vehicles which would be encountered under the circumstances would be those which came from the east on Seventh Street and turned south into San Julian, those which came from the south on San Julian, and those which might be rounding the intersection, as the bus was. Plaintiff testified that as he entered San Julian he was ahead of the bus; that after he passed it as it stood at the curb he did not see it before coming into contact with it, and that at that time he was looking to his right. He also testified that when he last saw the bus standing at the curb on Seventh Street he was only a couple of steps away from the curb on San Julian. Witnesses who were on the bus also testified, but their testimony added nothing to the circumstances of the accident as above related. The essential question is: was plaintiff guilty of negligence as a matter of law in failing to look to his left again before leaving the curb, in order to see whether the bus was coming around the corner. It is our opinion that the question whether he failed to exercise ordinary care was one of fact, as the learned trial judge concluded after he had reviewed the transcript of the evidence upon the motion for a new trial. It is inherent in the jury system that divergent views as to what constitutes ordinary care will be held by individual jurors and will be reflected in

the verdicts which they return. Some verdicts will appear to a reviewing court to be somewhat extreme one way or the other, but these determinations must be respected unless they are seen to be so unreasonable as to justify the belief that the jury arrived at its conclusions without a fair consideration of the evidence. The implied finding that plaintiff was not guilty of contributory negligence does not appear to be unduly favorable to him. As already noted, he was not crossing an ordinary street intersection but one in which no vehicles would approach him from the north other than those which were turning to leave Seventh Street. He was in a crosswalk, with right-of-way which drivers of vehicles were bound to respect. Uncounted numbers of pedestrians cross our busy intersections hourly under similar conditions. Motorists making turns at such intersections go slowly, yielding to pedestrians until they are allowed to pass through. Such traffic conditions are of common knowledge to motorists and pedestrians alike. We recently said, in the case of a pedestrian who had been struck by a car making a left-hand turn: ''The jurors no doubt knew from experience that a pedestrian, in crossing the street at an intersection, must of necessity, in order to proceed safely, give more attention to traffic which is in his path or approaching him from the right or the left than to that which may be approaching diagonally from the rear. It is the duty of motorists who are making turns at intersections to have this fact in mind and when they approach pedestrians diagonally from the rear, to assume a large measure of responsibility to avoid striking them.'' (*Spillers* v. *Silver* (1945), 69 Cal.App.2d 231 [158 P.2d 617].) Unquestionably it is necessary for a pedestrian at an intersection to make some effort to see whether vehicles traveling in the same direction are about to turn across his path, but whether the precautions taken measure up to ordinary care must be determined from the facts of the particular case. Accepting as true the testimony of plaintiff, it would not have been an unreasonable assumption upon his part that if defendant's bus did start up and turn south into San Julian Street, he could safely cross ahead of it. He could reasonably have assumed that the bus would get under way slowly and that the driver would see him and respect his right-of-way. As plaintiff was walking toward the center of the street he looked to the right. The front of the bus, which had swung far into

San Julian, was swinging back toward him. Plaintiff, and no doubt the driver, at the time of the collision, were looking for vehicles approaching from the south. The conclusions of the jury that the driver was at fault and that plaintiff was not, were not unreasonable in view of the fact that plaintiff was entitled to the immediate use of the crosswalk, while the bus driver was not. Counsel for defendant have cited many cases in which the conduct of pedestrians has been held to show as a matter of law failure to exercise ordinary care. It is unnecessary to discuss them. That a pedestrian, before stepping from a place of safety into one of danger, must look for oncoming traffic is an elementary rule. But it is also true that if a pedestrian is aware of his surroundings, the fact that he acts under a mistake of judgment does not necessarily mean that he was negligent. The conclusion of the jury that plaintiff did not fail to exercise ordinary care was not unwarranted.

The judgment and the order denying motion for judgment notwithstanding the verdict are affirmed.

Desmond, P. J., and Wood, J., concurred.