[Civ. No. 20316. Second Dist., Div. Three. July 29, 1955.]

BEN W. WOLFE, Appellant, v. GREEN MEARS CON-
STRUCTION COMPANY et al., Respondents.

Betty & Campbell, Marion P. Betty, Lionel T. Campbell
and Joseph F. Bender for Appellant.

Betts, Ely & Loomis, Ingall W. Bull, Jr., and Hulen .C.
Callaway for Respondents.

WOOD (Parker), J.—Appeal from a judgment of nonsuit,
in an action for damages for personal injuries sustained as
a result of falling into a ditch.

Defendant Haddock Engineers was general contractor for
the construction of a United States Naval Ordnance Test Sta-
tion in the Mojave Desert, about 9 miles from Inyokern, which
construction work included the excavation of a ditch for the
installation of a pipeline.

Oil Field Construction Company was a subcontractor of
Haddock Engineers.

Defendant Green Mears Construction Company was sub-
contractor of Oil Field for the excavation of the ditch, in-
stallation of the pipe, and filling the ditch after installation.

Plaintiff, an insulator-plasterer, was employed by Plant
Rubber and Asbestos Works, which was a subcontractor of

Green Mears. He began such employment in November, 1944. The naval station covered an area about 20 miles long and several miles wide. Within that area there were paved streets and dirt roads; and, among other things, there were barracks, mess halls, stores, a bank, a barbershop, a hospital, warehouses, recreation buildings, and a ball park. Plaintiff worked as an insulator or plasterer of buildings within the production area of the naval station or base, which area was about 10 miles from the place where the accident occurred; and he lived in barracks which were about half a mile from the place of the accident. Plaintiff had an employee's badge and he was not restricted in walking any place on the base, except in the production area and in places which were fenced with barbed wire and where there was a guard.

The ditch involved here was within the base area, was about 6 feet deep and 100 feet long, and was parallel with and about 10 feet south of "C" Street. Approximately 3,000 employees traveled on C Street daily. Usually plaintiff rode to his work in a station wagon with other employees, and they traveled on that street.

The accident occurred on September 4, 1945. During the week preceding the accident, plaintiff had been on vacation and away from the base. He worked on September 4, and returned to his barracks about 5:30 p. m. About 7:30 or 8 p. m. he went with two of his fellow employees in an automobile to the business center (located southwest of his barracks). He went into a barbershop and then his fellow employees left him, stating that they were going to the recreation place (where there was a ball park). After getting his hair cut he went to a store and bought hair tonic and a carton of book matches. (Appellant asserts that the materiality of such patronizing was that it indicated that he was an invitee.) Then, between 8 and 8:30 p. m., he started to walk to his barracks. He walked in a northeasterly direction to the intersection of J and C Streets. C Street was paved. There was no light at that intersection, but a light (a red lantern) was there before he left for his vacation. As he turned to go west on C Street he saw a red light on a barricade, across C Street, about 300 feet west of said intersection. At the barricade there was a detour, about 500 feet long, which extended to the north and west around some construction work on C Street. North of C Street there was a pile of dirt which was 6 to 8 feet high—the detour went around it. The detour was in the sand and consisted of automobile or truck ruts. Appel-

lant testified that when he had gone 20 or 30 feet on the detour, in the outer (north) or right-hand rut, he stepped out of the detour or rut to let an oncoming car pass; he stepped out to the north (right-hand side) a distance of approximately two feet; he turned around and looked at the car as it passed him; over the pile of dirt he could see the lights of the ball park, which lights were turned on while he was stepping out of the detour as the car was passing; then he decided to go to the ball game; the ball park was about 1,000 feet from him (south—in the vicinity of the business center); he started back to the game, and as he did so he "must have been in another track, forgetting" that he had stepped out of a track to let the car pass; when he stepped out of the detour he must have stepped into another truck track, because the track or rut which he then followed took him straight east instead of taking him southeast (back over the detour rut) to C Street; he followed those ruts (into which he stepped from the detour) but he could not see them—he followed them with his feet; when he had gone approximately 50 feet he ran into a roll of wire—his leg hit the wire; he wondered what was in front of him and he lighted a match, saw it was a roll of fence wire, and he knew he was about 15 feet north of C Street because the pile of dirt (near the detour) was not over 15 feet from the north side of C Street; then he walked on about 6 feet and he passed a pile of lumber about 2½ feet high—he could see the lumber by the match light; then he lighted another match and continued east until the match went out—a distance of 15 or 20 feet; then he lighted another match, and in front of him there were truck tracks or ruts; he turned and walked south in the right-hand (west) truck rut, which was about 6 inches deep; when he turned south he was about 100 feet east of the east end of the detour and 15 feet north of C Street; he kept in that rut and went south until he fell into the ditch (which was south of C Street); he did not know that he crossed C Street while he was going south—he could not feel the pavement with his feet as he went over C Street because there was dirt on the pavement; he did not see the ditch before he fell into it; the place where he fell into the ditch was about 150 feet west of the intersection of J and C Streets and about 125 feet east of the detour. (After he turned south he went 15 feet to C Street, 16 feet across C Street, and 10 feet farther to the ditch —a total of 41 feet.)

On cross-examination, appellant testified that when he bumped into the wire he was about 20 or 30 feet from the

detour but he went on east 70 or 80 feet, without attempting to get on C Street, because he had to go east anyway and it did not make any difference whether he got back on C Street or went east there (where he was); from the time he stepped out of the detour, he had no visibility of the ground where he was walking except when he lighted the matches; he had a carton of matches with him; when he turned south he was searching for something that would put him on C Street, because he could not see his "hand before his face"; when he turned south he knew then, when he lighted a match, that he was approximately 15 feet north of C Street and 100 feet east of the barricade; after he turned south the red light on the barricade was within the range of his vision, but he did not look "over [toward] the barricade" and determine the relative position of the road because it was to his back and he did not turn around and look at it; the land between C Street and the ball park, except for 150 feet west of J Street, was several acres of brush 4 or 5 feet high, and there were no roads or paths on that land; he knew that the ditch had been south of C Street for four or five weeks preceding the time he went away for a week of vacation.

Appellant contends that the court erred in granting the motions of Haddock Engineers and Green Mears for a nonsuit, for the reason that those defendants owed appellant the duty of exercising ordinary care for his protection, and that defendants breached that duty and proximately caused appellant's injuries, without any contributory negligence on the part of appellant. He argues that defendants were negligent in that they left the deep ditch, which was within 10 feet of the heavily traveled C Street, uncovered and without any warning, barricade, lights or other safety devices on or around the ditch; and that appellant was an invitee of defendants because he was employed on the naval base by a subcontractor and therefore he was rightfully on the premises with the consent of the owner and the defendants, as contractor and subcontractor. With reference to being an invitee, he also refers to evidence that he lived on the base; he entered and traveled on the base by authority of a pass or badge; he patronized business places thereon; and he was on his way to the recreation center when he was injured.

Respondents assert that appellant's status at the time and place of the accident was that of a trespasser or mere licensee.

Appellant had been employed at the base about 10 months preceding the accident and he had traveled on C Street many

times. He knew that several acres on the south side of C Street, in the vicinity of the scene of the accident, were undeveloped desert land covered with brush. He knew that the ditch was south of C Street for a few weeks preceding the time he went away for a week. When he went west on C Street, approaching the detour, he was guided by looking at the red light on the barricade across C Street at the beginning of the detour. When he stepped from the detour he was 20 or 30 feet from that light. When he started to the ball game by going east, after having stepped from the detour, he did not try at that time to return to C Street, because (according to his testimony) he had to go east anyway to get to the ball game and it did not make any difference to him whether he returned to C Street and then went east on it or whether he continued east where he was then walking. After he had gone about 50 feet east and had run into the wire and had seen the lumber, he knew he was in a construction area. It was so dark he could not see his hand before his face. The area there was unfamiliar to him. He followed the rut ''with his feet.'' He lighted matches in order to see the wire, the lumber, and the ruts; and in order to make his way in the unfamiliar construction area. After turning south and while going toward C Street and the ditch, and while he was in such darkness that he could not see his way, he did not light any of the many matches he had with him. Also during that time, he did not look toward the red light (which was on the barricade across C Street) in order to get his bearings with reference to C Street. It does not appear that he was following the rut when he crossed C Street or when he walked the 10 feet beyond C Street to the ditch. ■ The evidence shows that after he left the detour, and preceding the accident, he walked in impenetrable darkness in unfamiliar desert territory for a distance of approximately 141 feet (about 100 feet to place where he turned south, and then about 41 feet to the ditch). Even if it be assumed that appellant was an invitee and that defendants were negligent, it appears as a matter of law that appellant was guilty of contributory negligence. In *Robinson* v. *King*, 113 Cal. App.2d 455 [248 P.2d 477], it was said at page 457: ''Where an invitee on premises, being unfamiliar therewith, proceeds into a place of impenetrable darkness and falls into an aperture and is injured, as a matter of law he does not exercise ordinary care for his own safety and hence any injury he receives is the result of his own contributory negligence for

which he may not recover.'' (See also *Medcraft* v. *Merchants Exchange*, 211 Cal. 404, 406 [295 P. 822] ; *Cheyney* v. *City of Los Angeles*, 119 Cal.App.2d 75, 78 [258 P.2d 1099] ; *Bruce* v. *Risley*, 15 Cal.App.2d 659, 663-664 [59 P.2d 847].) In *Mitchell* v. *A. J. Bayer Co.*, 126 Cal.App.2d 501 [272 P.2d 870], it was said at page 504: ''We are also of the opinion that plaintiff was shown to have been guilty of negligence as a matter of law. He stepped into an area with which he was unfamiliar; it was 'pitch dark' and he took no precautions for his safety. . . . In his briefs he has stated no reason for his conduct except that he was following the lead of a wire he was tracing. This may account for his falling as he passed through the opening into utter darkness but it does not acquit him of negligence.''

By reason of the above conclusion, it is not necessary to discuss other questions on appeal.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.