[Civ. No. 17964.   First Dist., Div. One.   Mar. 24, 1959.]

LOUIS A. CHIAPPE, Respondent, v. EUGENE EICHENBAUM et al., Appellants.

48

Bronson, Bronson & McKinnon for Appellants.

Lewis, Field, De Goff & Stein and Morgan & Beauzay for Respondent.

WOOD (Fred B.), J.—Plaintiff opened an elevator door in defendants' building, at the ground floor level. He stepped in, fell to the bottom of the shaft and was seriously injured. Defendants in support of their appeal claim insufficiency of the evidence, error in an instruction and prejudicial mention of insurance.

There were two elevators, designated Number 1 and Number 2. The latter had an auxiliary lock on the hoistway door at the ground floor level, intended to prevent the doors from being opened from the outside whenever the car was more than 30 inches above or below the car landing.

The Number 1 elevator had no auxiliary lock. Its hoistway doors could be unlocked from the outside, regardless of the distance of the car from the landing, by inserting a wire hook (called a "cheater") between the doors, hooking it onto a bar inside the doors and pulling down on the bar.

Prior to the accident, plaintiff had been engaged in building maintenance, doing general janitorial work. He had been taking care of this building for about a month. On this account he went to the building at 8 a. m. to meet the Ferrari family there and take them to the 10th floor to clean Venetian blinds. He had been the last person in the building the day before, leaving about 1 o'clock in the morning. In doing so he used elevator Number 1, leaving it on the main floor. He turned

off the first floor lights by the main switch so that a tenant might install air conditioning equipment without risk of electric shock.

Upon returning in the morning he found the Ferraris in the lobby, which was dark. He looked at the elevator indicators. Observing that the Number 2 elevator was on the eighth floor and the Number 1 elevator was on the main floor, he got the "cheater" from the closet and opened the Number 1 elevator door. He then stepped into what he thought was the elevator, to turn on the elevator light, and fell into the basement, the car not being on that floor.

At the time of the accident, the elevator floor was covered with a black rubber mat. Plaintiff testified he thought the elevator car was there when he stepped in. He "was positive the elevator is right there or the door don't open."

(1) *Does the evidence support the implied finding that defendants negligently caused the accident?*

■ The doors of the hoistway of the Number 1 elevator were not in conformity with the requirements of the applicable safety regulation, section 3022(e) of the Administrative Code: "Elevator hoistway doors or gates shall not be arranged to be unlocked from outside the hoistway except where the unlock-means is of a type which cannot function unless the car is at or within thirty (30) inches of the landing. . . ."

Knowing or knowledgeable maintenance of the Number 1 elevator doors in nonconformity with section 3022(e) would be a continuing violation of the safety regulation and as such a continuing act of negligence toward persons to whom the building owners owe a duty of care.

Plaintiff was such a person. He was a business invitee. (Rest. Torts, § 332; *Hinds* v. *Wheadon,* 19 Cal.2d 458, 460 [121 P.2d 724].) ■ As to business invitees, "the property owner was obliged to exercise ordinary care to keep the premises in a reasonably safe condition, or to warn them of danger. The duty was not limited to conditions actually known by the owner to be dangerous, but extended also to conditions which might have been found dangerous by the exercise of reasonable care." (*Blumberg* v. *M. & T. Inc.,* 34 Cal.2d 226, 229 [209 P.2d 1].) Here, the fact that the elevator doors were capable of being opened when the car was not on the landing was undoubtedly dangerous. (See *Jacobi* v. *Builders' Realty Co.,* 174 Cal. 708, 710-711 [164 P. 394] ; *DeGraf* v. *Anglo California Nat. Bank,* 14 Cal.2d 87, 96-97 [92 P.2d 899].) ■ The defendant Mr. Eichenbaum testified that he relied upon the inspection

of Mr. Bateman, a certified elevator inspector and insurance company representative. Whether or not this discharged his duty of reasonable care and absolved him from negligence was a question for the jury. (See *DeGraf* v. *Anglo California Nat. Bank, supra,* at pp. 97-98.)

Defendants argue that plaintiff's unhooking of the doors from the outside was a violation of the regulation, not the condition of the doors themselves. The basis of their interpretation is not clear. It seems to depend in part upon construing the word "arranged" as meaning "designed" and the concept that these doors were not "designed" for unlocking from the outside. Such a view imports a subjective element into the picture that is neither necessary nor reasonable in the light of the manifest purpose of the regulation and the words used to express that purpose. The regulation deals with doors capable of being unlocked or unfastened or opened from the outside.*

Defendants also argue that the violation of the safety regulation was plaintiff's responsibility because he undertook by contract "responsibility for the operation of the elevators and the performance of acts necessary for the upkeep of the building." The contract referred to is a contract to perform usual janitorial services in the building. The only references to elevators in the specifications are to "Polish inside of elevator cabs nightly; clean and wax elevator cabs nightly," "vacuum elevator cabs twice daily, or as required," "damp mop elevator cabs once in the morning and once in the afternoon," and provide elevator operators during certain hours. The contract cannot be construed as an undertaking to provide a safe elevator, nor to authorize the reconstruction of the elevators.

Defendants also would shift to plaintiff the responsibility for lighting the lobby. Whatever his general obligation in that regard may have been, the jury had before it the question of the need for temporary discontinuance of the main lighting circuit for the protection of workmen making certain electrical installations. Also, it was for the jury to determine what causative bearing, if any, the absence of light in the lobby had upon the occurrence of this accident.

---

*Defendants rely also upon the testimony of a certain safety engineer and inspector for an insurance company, who expressed his opinion as to the meaning of section 3022(e).

Neither the trial court nor this court, in exercising the judicial function of interpreting this writing, is bound or governed by the expert's opinion on that subject.

(2) *Does the evidence support the implied finding. that plaintiff did not negligently contribute to the accident?*

Defendants argue that the plaintiff was contributorily negligent as a matter of law because he unreasonably selected the more dangerous of several alternatives, entered a place of impenetrable darkness, and committed an illegal act proximately contributing to his injuries. They also apparently argue that stepping into an empty elevator shaft is negligence as a matter of law, citing *Globe Indemnity Co.* v. *Hook,* 46 Cal.App. 700 [189 P. 797], where two men stepped into an elevator shaft, looking backward, having made no effort to ascertain whether the elevator was on the floor, and knowing that at the time the elevator was customarily on the upper floors, and *Kauffman* v. *Machin Shirt Co.,* 167 Cal. 506 [140 P. 15], where the plaintiff's decedent went up in the elevator, found the door partly open, opened it a little further, delivered a package, returned and stepped through the door into the empty elevator shaft. The court stated that plaintiff knew it was possible to leave the door partly open and that it was possible to move the car when the door was open, since he had just done so. (P. 510.) The facts of neither of these cases are comparable to those of our case.

Plaintiff's testimony was that he looked at the indicators, saw elevator car Number 1 was at the lobby floor, opened the doors, and believed that the doors could not be opened unless the car was at the landing. It was dark in the lobby and the floor of the elevator was covered with black rubber mats. Although his conduct ultimately proved to have been hazardous, his actions do not appear to have been so unreasonable as to constitute contributory negligence as a matter of law.

Defendants argue that plaintiff should have turned on the lobby lights. The first floor lights had been turned off by plaintiff by the main switch so that a tenant might install air conditioning equipment. Under these circumstances, it would not appear to be negligent not to turn the lights on, since this might have been dangerous to other workmen on the premises.

Defendants argue that plaintiff could have rung the bell and waited for the person who had taken the elevator to bring it back. Why should he? It appeared to him at the time that the Number 1 car was at his floor. Using that car instead of signaling for the other was not negligence as a matter of law.

Defendants also suggest that plaintiff could have left the elevator doors open the night before. Of what benefit this would have been is not apparent.

■ Defendants contend that it is contributory negligence as a matter of law to enter a place of impenetrable darkness. In *Cheyney* v. *City of Los Angeles,* 119 Cal.App.2d 75, 78 [258 P.2d 1099], plaintiff walked down steps leading from a parking lot to a beach and fell 29 inches from the last step to the sand. She was aware that the waves and tides were eroding beaches in Southern California at that time. The court affirmed a nonsuit, invoking the rule that an invitee unfamiliar with the premises is contributorily negligent in proceeding into a place of impenetrable darkness. In *Robinson* v. *King,* 113 Cal.App. 2d 455, 457 [248 P.2d 477], an invitee, unfamiliar with the premises, reached inside a doorway to find a light switch. Finding none, he stepped through and fell down a flight of stairs. In *Wolfe* v. *Green Mears Construction Co.,* 134 Cal. App.2d 654, 658 [286 P.2d 433], the plaintiff walked in impenetrable darkness in unfamiliar desert territory for a distance of approximately 141 feet and then fell into a ditch. In *Mitchell* v. *A. J. Bayer Co.,* 126 Cal.App.2d 501, 504 [272 P.2d 870], the plaintiff construction worker walked through a hole which was pitch dark, being unable to see anything inside the hole, and not knowing what was inside. He fell down a stairway.

None of these cases is applicable. In each of them the plaintiff was unfamiliar with the premises and had no reasonable expectation of safety upon entry into darkness. Here, according to the plaintiff, the appearances were consistent with safety and with what plaintiff had been led by prior experience and his knowledge of the premises to expect. These facts are more comparable to those in *DeGraf* v. *Anglo California Nat. Bank, supra,* 14 Cal.2d 87, 98, where the plaintiff fell into a dimly lighted freight elevator shaft, believing the elevator would not operate with the doors open, and therefore, that the cab was at the landing. The opening was "very dark." (P. 92.) The court held, affirming a judgment for plaintiff, that there was no contributory negligence as a matter of law.

Defendant also argues that the means plaintiff used to open the door was illegal and unlawful, again mistakenly relying upon the engineer-inspector's interpretation of section 3022 (e), the administrative regulation.

(3) *Did the court commit prejudicial error when it submitted the administrative regulation, section 3022(e), to the jury for its interpretation?*

■ The questioned instruction read as follows: "You are

instructed that where a safety order or regulation is ambiguous, an expert may be called to testify as to the practical interpretation by the department charged with the administration and enforcement. This practical interpretation is entitled to the highest respect.

"You are instructed that the interpretation given to a rule or regulation such as Section 3022(e) of the Division of Industrial Safety, State of California, Elevator Safety Orders, the same section which I read to you, by those charged with its execution, is entitled to the greatest weight, and such interpretation will be followed, unless it appears to you to be clearly unreasonable or arbitrary."

It is true that courts when interpreting a statute or regulation give attention and weight to the interpretation placed thereon by the agency charged with its administration.

The question, however, is one of law for determination by the court; not a question of fact for determination by the jury. (Code Civ. Proc., § 2102; *Estate of Madison*, 26 Cal.2d 453, 456-457 [159 P.2d 630].)

It happened in this case that the administrative agency, the Division of Industrial Safety, interpreted the administrative regulation the same as does this court. It appears that the jury in fact followed that interpretation. We conclude that the defendants suffered no prejudice by reason of the submission of this question to the jury. Defendants mistakenly argue that the giving of this instruction shifted the burden of proof. The instruction dealt solely with interpretation of the regulation, not with the burden of proof nor the function of the jury in weighing evidence and determining disputed questions of fact.

(4) *Were defendants prejudiced by the wrongful injection of a false issue of insurance into the trial?*

Plaintiff joined as defendants the building owners' insurer and its engineer-inspector upon the theory that the latter, acting within the scope of his employment, negligently inspected and failed to discover the unsafe condition of the elevator. This theory had some support in *Barbaria* v. *Independent Elevator Co.*, 139 Cal.App.2d 474, 481-482 [293 P.2d 855]. Such a theory is not untenable in law. Here, there is nothing to indicate that plaintiff did not urge it in good faith. Moreover, defendants cite a number of instances in which plaintiff's counsel in his opening statement, and later by questions asked during the trial, made reference to the insurance company's

inspection of the elevator. In none of those instances did defendants interpose objections at the time.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied April 23, 1959, and appellants' petition for a hearing by the Supreme Court was denied May 20, 1959. Peters, J., did not participate therein.