[Civ. No. 21124. First Dist., Div. One. Jan. 29, 1964.]

MICHELINA RUSSO, Plaintiff and Appellant, v. PAUL BURCH, JR., Defendant and Respondent.

D. Ralph Cesari and Andre V. Tolpegin for Plaintiff and Appellant.

Edward A. Friend for Defendant and Respondent.

MOLINARI, J.—Plaintiff appeals from a judgment in favor of defendant in an action for damages for personal injuries. The questions presented are as follows:

(1) Did the trial court commit prejudicial error in failing to instruct as to the duty owed by a landlord to an invitee of the tenant?

(2) Did the trial court commit prejudicial error in instructing the jury that "Walking through an unlighted, unfamiliar area in the dark constitutes negligent conduct"?

(3) Did the trial court commit prejudicial error in making certain comments in the presence of the jury?

The pertinent facts of the case are as follows: On December 10, 1958, between 5 and 5:30 p.m., plaintiff visited the dwelling of Mrs. Norma DiTano, a voice coach, for the purpose of securing certain musical instruction. This dwelling was one of two flats, known as 3043-3045 Octavia Street, San Francisco, which were owned by defendant. Mrs. DiTano was the tenant occupying 3043. Another family occupied 3045. Access to both flats was gained through a doorway in the front of the building on Octavia Street. The doorway led to a courtyard some 6 feet wide and 10 feet in length. At the opposite end of the courtyard there were 6 steps approximately the same width as the courtyard. These steps led to a landing which, in turn, led to two glass doors leading to the respective flats. These doors were next to each other and each faced the landing. The landing was approximately 6 feet long. Defendant testified it was 3 feet 4 inches wide, while plaintiff's testimony was that it was only 30 inches wide. The landing as well as the steps was made of a tile or terrazzo composition. There was no other method of ingress or egress to Mrs. DiTano's flat, excepting the door thereto located at the landing.

Above and between the two doors to the respective flats was a light bulb inserted in a socket, the switch controlling the same being located in the flat at 3045 Octavia. Defendant testified that said switch was located inside the door at 3045, to which flat Mrs. DiTano did not have access; that he had

taped the switch to the "on" position to prevent the light from being turned off; that the light burned continually for 24 hours a day; and that this light was specifically for the purpose of illuminating the stairs and patio fronting the two flats. It was defendant's testimony, also, that he was on the premises at least twice a week, that whenever he discovered the light was burned out it was his practice to replace it and that he had done so many times. Above the landing was a window, approximately 3 feet high and 4 feet wide, the bottom sill of which was about waist level. This window was located in the kitchen of Mrs. DiTano's flat. There was testimony that Mrs. DiTano had placed a lamp near this window, and that the light from the kitchen and from this lamp would illuminate the landing. Mrs. DiTano testified that she maintained a small light near this window for the purpose of signifying to her students that she was in her flat. With respect to the kitchen light, Mrs. DiTano testified that the light in her kitchen was on the ceiling with an opaque fixture around it, that it was not near the kitchen window, and that it cast no light on the staircase.

Testimony was elicited from defendant that there was a hall light about 3 to 4 feet inside Mrs. DiTano's flat which would produce enough light "to illuminate the edges of the stairway and roughly the patio below" when the door to the flat was open. Mrs. DiTano testified that this hall light would not cast any illumination on the stairs, even when the door was opened, because she supplied it with a small bulb and covered it with an opaque fixture.

On the day in question, upon the termination of the voice session at about 7 p.m., plaintiff and Mrs. DiTano prepared to leave the flat together. Plaintiff opened the door leading to the landing and observed that the lights were out and that it was "pitch black."[1] She made her way forward along the landing, tried to grasp the shingles on the wall of the building, and then plunged forward, falling down all six steps to the patio.[2] On cross-examination, plaintiff stated that she did

[1]Plaintiff's testimony was as follows: "Well, when I opened the door, it was misty, foggy I guess, and it was — by that time the lights were out and it was pitch black. There was no lights of any kind coming from anywhere."

[2]Plaintiff testified as follows: "Well, I started reaching forward and I was trying to get a — grab the shingles. They were thick shingles and I was trying to grab the shingles to find my footing and I just didn't find that stair, that step. I just fell right completely through down the

not "trip over anything," that she did not "slip on anything," but that she "stepped forward" and "couldn't find the step, and fell forward." At the time of her fall plaintiff held her purse and a briefcase containing her sheet music in her left hand. The heels on her shoes were "Cuban heels" which are 1½ inches high and 1½ inches wide at the bottom.

The first that Mrs. DiTano knew about the fall was when she observed plaintiff at the bottom of the stairs. She then reentered her flat, turned on the lights, and dispatched her son to notify defendant, whose place of business was in the vicinity. Plaintiff testified that when defendant inquired " '[w]hat happened,' " she told him: " 'I don't know; it was dark and I fell down the stairs' " and that he then stated: " 'Oh, my God, those lights should be on 24 hours a day.' " Defendant did not recall making this statement when he testified at the trial. He did testify, however, that when he arrived at the premises the light bulb was out.

Evidence was adduced that plaintiff had been regularly visiting Mrs. DiTano's flat for two years, and that, at times, during the previous visits, she had descended the stairway after it had grown dark outside, but had never before fallen. Plaintiff testified that on these previous visitations there was light from somewhere but she could not recall whether the source of illumination was the light bulb over the landing or from Mrs. DiTano's flat. It was plaintiff's testimony that the lamp near the kitchen window cast some light on the landing. Plaintiff testified that on the previous occasions she "always proceeded down very carefully and walked up very carefully"; and that she had to go down very carefully after she had her foot on the first step and hold on to the shingles. It was further testified, by plaintiff, that this particular occasion was the first time in "100 visits" that it was "pitch black," giving as her reason therefor that Mrs. DiTano, immediately behind her, "had turned off all of the lights. ..." Plaintiff also stated that it "never occurred" to her to ask Mrs. DiTano to switch on a light.

Mrs. DiTano testified that between the time defendant took over possession of the premises at the end of 1956 and plain-

stairs. You see you couldn't walk down the stairs like these; you had to walk sideways because they were narrow. I couldn't put my foot and walk down the way you do naturally. You had to put your foot down sideways and walk down sideways. And I was trying to stay close and get my foot on and it happened between the minute we left the place and closed the door, so that we just — well, I just went."

tiff's accident, the light over the landing was never on, and that her students had to use flashlights, matches and other means of illumination.

With this factual background, we turn to the main question presented on this appeal, i.e., whether it was prejudicial error to give the instruction that "Walking through an unlighted, unfamiliar area in the dark constitutes negligent conduct."[3] This instruction is declarative of the rule announced in *Robinson* v. *King* (1952) 113 Cal.App.2d 455, 457 [248 P.2d 477], that "[w]here an invitee on premises, being unfamiliar therewith, proceeds into a place of impenetrable darkness and falls into an aperture and is injured, as a matter of law he does not exercise ordinary care for his own safety and hence any injury he receives is the result of his own contributory negligence for which he may not recover." In *Robinson*, an invitee, unfamiliar with the premises, reached inside a door to find a light switch, and finding none, stepped through the doorway and fell headlong down a steep flight of stairs. *Robinson* has been followed in three cases, to wit: *Cheyney* v. *City of Los Angeles* (1953) 119 Cal.App.2d 75, 78 [258 P.2d 1099]; *Mitchell* v. *A. J. Bayer Co.* (1954) 126 Cal.App.2d 501, 504 [272 P.2d 870]; and *Wolfe* v. *Green Mears Constr. Co.* (1955) 134 Cal.App.2d 654, 658 [286 P.2d 433]. In *Cheyney*, the plaintiff walked down a stairway, leading from a parking lot to a beach, and fell 29 inches from the last step onto the sand. There the plaintiff had never been on the stairway in question before, or in the vicinity thereof. Similarly, in *Mitchell*, the plaintiff construction worker walked through a hole in a partition; not being able to see anything inside because it was "pitch dark," and not knowing what was inside, he fell down a stairway. (P. 503.) Again in *Wolfe*, the situation presented involved a fall into a ditch after the plaintiff had walked in impenetrable darkness, in unfamiliar desert territory, for 141 feet. (See also *Bruce* v. *Risley*, 15 Cal.App.2d 659, 664 [59 P.2d 847].)

In 1952, and prior to the decision in *Robinson*, the Supreme Court decided *Hayes* v. *Richfield Oil Corp.*, 38 Cal.2d 375 [240 P.2d 580]. This case was not cited in *Robinson*, nor in *Cheyney*, *Wolfe*, or *Mitchell*. In *Hayes*, the plaintiffs, who were husband and wife, were invitees on certain service station premises. They were walking across said premises at 2:30 a.m. All the service station lights had been turned off excepting two lights in the station premises. A street lamp

[3]This quoted language constitutes the instruction given in its entirety.

also partially illuminated the service station area, but the illumination was such that objects could only be vaguely distinguised. The husband walked ahead of his wife, and in the darkness she fell into a grease pit. The wife was not aware of the pit. The husband knew of its location, but testified that he did not think of it prior to the accident. It was contended that the plaintiffs were guilty of contributory negligence as a matter of law, the basis of the contention being that the husband, who knew the location of the pit, was negligent in failing to warn his wife of its existence, and that his negligence must be imputed to her; and that, as to the wife, she was negligent in proceeding over unfamiliar ground in the darkness. The Supreme Court held that the question of contributory negligence was one of fact for the jury and that neither plaintiff was negligent as a matter of law. The court reasoned that a jury could have concluded that the husband was not negligent in failing to keep in mind the existence of the pit or in failing to warn his wife, and that it could also have found that the wife was not aware of the hazard and that she did not act unreasonably in assuming that there was nothing of a dangerous character on the premises.

In *Chiappe* v. *Eichenbaum*, 169 Cal.App.2d 46 [336 P.2d 1045], a building maintenance man opened a door in a building, stepped in, and fell to the bottom of a shaft. He had stepped from the lobby floor, which was dark, into what he thought was the elevator, to turn on the elevator light, and fell into the basement, the car not being on the floor. There the plaintiff, who had been taking care of the building for about a month, testified that he " 'was positive the elevator is right there or the door don't open.' " (P. 49.) The reviewing court held that the plaintiff was not contributorily negligent as a matter of law and in doing so distinguishing *Robinson, Cheyney, Wolfe* and *Mitchell* on the basis that "[i]n each of them the plaintiff was *unfamiliar* with the premises and had no reasonable expectation of safety upon entry into darkness." (P. 52; italics added.) "Here, according to the plaintiff," said the appellate court in *Chiappe*, "the appearances were consistent with safety and with what plaintiff had been led by prior experience and his knowledge of the premises to expect." (P. 52.) *Chiappe* relied upon *DeGraf* v. *Anglo California Nat. Bank*, 14 Cal.2d 87 [92 P.2d 899], where the plaintiff fell into a dimly lighted freight elevator shaft, believing the elevator would not operate with the doors open, and, therefore, that the cab was at the landing. The plaintiff could not see whether the elevator was there or not

because it was " 'very dark' " inside. (P. 92.) The Supreme Court, in affirming a judgment for the plaintiff, held that there was no contributory negligence as a matter of law.

In *McLaughlin* v. *City of Los Angeles,* 60 Cal.App.2d 241 [140 P.2d 416], the plaintiff fell on a street which he knew was defective. The street was in the vicinity of his home and he had often passed the place where the accident occurred and was familiar with the conditions there. The accident occurred at 8 :30 p.m. ; there were no street lights in the vicinity and it was dark. The plaintiff knew that there was a strip of ground next to a fence on which he had been able to walk safely under similar conditions, but on the night of the accident a parked automobile prevented him from using this safe path, so he attempted to walk around the left of the automobile on what appeared to him to be a path wide enough to pass between the automobile and a hole on its left. His foot slipped on the edge of this hole and he fell, sustaining injuries. It was held that he was not negligent as a matter of law.

A case somewhat similar to the case at bench, although not involving the circumstance of darkness, is *Rau* v. *Redwood City Woman's Club,* 111 Cal.App.2d 546 [245 P.2d 12], decided by this court. There the plaintiff violin teacher was invited to participate in a recital which was to be given in a rented auditorium. The day before the recital the plaintiff and others came to the auditorium to rehearse. There was only one stairway to the stage. It consisted of 5 or 6 steps. As the plaintiff started up the stairs her foot slipped forward, at which time she noticed that the stairs were worn and shiny and that they were slippery. She had no further difficulty going up. After the rehearsal, while descending the stairs, she noticed that each step was slippery. There being no bannister to hold on to, she stayed near the wall, touching it with her fingertips. The next evening, while going up the stairs, she noticed that they were very slippery. After the recital she proceeded down the stairs, carrying her violin, her music, the violin bow, and had gathered up her formal dress, all in her right hand. As she started down the steps she was looking where she was going, but slipped, fell on her buttocks, slid to the foot of the stairs, and was injured. The plaintiff testified that she knew of the slippery condition at the time she started down the stairs and that she went carefully, touching the side wall with the tips of the fingers of her free hand, because of that fact. It was there held that the plaintiff was not negligent as a matter of law because she

recognized a slippery condition of the floor, which she felt to be dangerous, and proceeded, nevertheless, to use the stairway exercising the care and caution to which she testified. As stated by Justice Bray, "Whether it was reasonable for her to use the only stairs to the stage under the circumstances and whether she was reasonably careful, were for the jury to determine." (P. 551; see also *Foster* v. *A. P. Jacobs & Associates*, 85 Cal.App.2d 746, 754 [193 P.2d 971].)

In *Rau*, the court distinguished *Fletter* v. *City & County of San Francisco*, 110 Cal.App.2d 820 [244 P.2d 59], where it was held that the plaintiff was guilty of contributory negligence as a matter of law, on the basis that the place of the accident was not a public one and that the cause of the fall was the plaintiff's misjudgment. There the plaintiff, knowing of the existence of an opening several feet deep between a platform on which he had been moving crates and another platform, purposely stepped from one in an attempt to reach the other, misjudged the distance, fell into the opening and sustained injuries. It should be noted, however, that there is a suggestion in *Fletter* that a different rule might have been applied had the lighting prevented the plaintiff from seeing, or that the dimness and poor lighting, to which he and other witnesses had testified, in any way obscured his vision. Said the court: "However, plaintiff did not say that the shadows or the dull lighting hampered his work, or interfered in any way with his seeing the openings or the edges of the openings either before or at the time of his fall." (P. 824.) It is convenient to note here, that it has also been held that to err in judgment does not necessarily mean that the person has been negligent. (See *Glover* v. *Los Angeles Ry. Corp.*, 72 Cal.App.2d 187, 191 [164 P.2d 264].)

It should be here pointed out that the courts in this state are reluctant to hold that contributory negligence exists as a matter of law. Accordingly, it has been reiterated by the cases on many occasions that the question, normally, is one of fact. (See *Florez* v. *Groom Development Co.*, 53 Cal.2d 347, 357 [1 Cal.Rptr. 840, 348 P.2d 200]; *McLaughlin* v. *City of Los Angeles, supra,* 60 Cal.App.2d 241, 244; *Atherley* v. *MacDonald, Young & Nelson, Inc.*, 142 Cal.App.2d 575, 585 [298 P.2d 700]; *Lokey* v. *Pine Mountain Lbr. Co.*, 205 Cal. App.2d 522, 529 [23 Cal.Rptr. 293].) Indeed, it has been stated that the cases in which it can be said that the negligence of the plaintiff contributes proximately to the accident as a matter of law are rare. (*Anthony* v. *Hobbie*, 25 Cal.2d

814, 818 [155 P.2d 826]; *Kirk* v. *Los Angeles Ry. Corp.*, 26 Cal.2d 833, 838 [161 P.2d 673, 164 A.L.R. 1].) The applicable rule is stated thusly in *Anthony*: "[C]ontributory negligence is not established as a matter of law unless the only reasonable hypothesis is that such negligence exists; that reasonable or sensible men could have drawn that conclusion and none other; that where there are different inferences that may be drawn, one for and one against, the one against will be followed; and that before it can be held as a matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion." (P. 818.)

 Upon analysis of the principles announced in the foregoing cases, we are satisfied that the rule declared in *Robinson* is indicative of one of the rare cases in which it can be said that contributory negligence exists as a matter of law. It should be specifically noted, therefore, that this rule is applicable where an invitee on premises, *being unfamiliar therewith*, proceeds into a place of *impenetrable* darkness. These circumstances were not only present in *Robinson*, but they are also found in *Cheyney*, *Mitchell* and *Wolfe*. As pointed out in *Chiappe*, the *Robinson* rule is not applicable where the invitee is *familiar* with the premises. (See also *DeGraf* v. *Anglo California Nat. Bank*, *supra*, 14 Cal.2d 87; and *Hayes* v. *Richfield Oil Corp.*, *supra*, 38 Cal.2d 375.) Moreover, as indicated by *Hayes*, the rule declared in *Robinson*, would not be applicable, although the premises are unfamiliar, where the area is dimly or poorly lighted, i.e., where the circumstance of "impenetrable darkness" does not exist. It is apparent, furthermore, from the cases, that, in spite of the presence of danger, a man of ordinary prudence may proceed into a familiar area by taking available precautions without being negligent as a matter of law. (*Hayes* v. *Richfield Oil Corp.*, *supra*; *McLaughlin* v. *City of Los Angeles*, *supra*, 60 Cal.App.2d 241; *Rau* v. *Redwood City Woman's Club*, *supra*, 111 Cal.App.2d 546.)

 Turning to the case at bench, it is apparent from the facts that the rule declared in *Robinson* is not applicable. Although the circumstance of "impenetrable darkness" is present, plaintiff having testified that it was "pitch black," we do not have the element of "unfamiliarity with the premises." The evidence is uncontradicted that plaintiff was quite familiar with the stairway and patio in question, having made some 100 visits to Mrs. DiTano's flat in the two-year period prior to the accident. The questions, therefore, which present them-

selves are these: Would a reasonably prudent person, situated as plaintiff was and knowing what plaintiff knew, have been justified in acting upon the appearances and under the conditions in the manner that plaintiff acted on this occasion? Do the facts point unerringly to the conclusion that plaintiff was contributorily negligent? In the light of the record, the first question must be answered in the affirmative and the second in the negative.

We are satisfied that under the evidence presented in the instant case, different conclusions may be drawn by different minds from such evidence. Although there is some conflict as to the extent of the illumination cast on the landing, stairway and the patio on the occasions when plaintiff visited Mrs. DiTano's flat previous to the accident, the evidence discloses that the area was dark enough to require that plaintiff proceed up and down "very carefully," and that while descending, she had to go down "very carefully," after she had her foot on the first step, and hold on to the shingles. While plaintiff knew on these occasions that there was danger attendant on her descent because of the dimly lighted conditions, she had, by holding on to the shingles and descending in the manner described by her, been able to descend safely under these conditions. Hence, she was not necessarily negligent in undertaking to descend the stairway. Nor do we believe that the conclusion reached by us is altered by the added circumstance that on the occasion of the accident it was darker because Mrs. DiTano, who was accompanying her, had turned out the lights in her flat, thus removing whatever illumination was reflected through the kitchen window. Although it was "pitch black" due to this circumstance the appearances to plaintiff, because of her familiarity with the staircase, were consistent with safety and with what she had been led by prior experience to expect. We cannot say, as a matter of law, that a reasonable person would not have done as plaintiff claims she did, i.e., carefully endeavor to use the stairs in the darkness, nor that a reasonably prudent person on discovering the "pitch black" condition would have refused to use the stairs or called the situation to the attention of Mrs. DiTano. Accordingly, whether it was reasonable for plaintiff to use the only method of egress from Mrs. DiTano's flat under the circumstances, and whether she was reasonably careful, were for the jury to determine.

In the instant case we have some reservations as to whether the challenged instruction, as given, correctly states the rule

of the *Robinson* case. We doubt that the words "unlighted ... area in the dark" connote the same meaning as "a place of impenetrable darkness. . . ." Assuming, *arguendo,* that they do, there was, however, no justification for the giving of the instruction because there was no basis in the evidence for it. ▉ Although a party has a right to proper instructions on every material issue of fact upon which he relies, in accordance with the pleadings and proof when there is substantial evidence to support his theory of the case, it is error to instruct on a theory that does not have such support. (*Daniels* v. *City & County of San Francisco,* 40 Cal.2d 614, 623 [255 P.2d 785] ; *Sheppard* v. *City of Los Angeles,* 172 Cal. App.2d 338, 342 [342 P.2d 282].) ▉ In the case at bench, viewing the evidence in the light most favorable to defendant, we find the record barren of any evidence that the premises in question were unfamiliar to plaintiff. To the contrary, the evidence is uncontradicted that she *was* very familiar with the landing, stairway and patio in question. Accordingly, it was error to give the instruction.

Our next consideration is whether this error was prejudicial. While, at first blush, it might appear that the instruction was merely an abstract statement of the law which, if inapplicable to the facts of the case, might be deemed harmless, a review of the record leads to the conclusion that the subject instruction might well have misled the jury. Although the court gave the usual instructions defining contributory negligence and its effect where it is one of the proximate causes of the injury, the subject instruction is the only one given dealing with the circumstance of walking into a place of darkness. This isolated instruction, as given, emphasized the words "unfamiliar area" and the principle applicable where one walks into such area in the dark. No instruction at all was given as to the rule applicable where one walks into a familiar area under such circumstances. The giving of the instruction in question manifestly added strength to defendant's contention that plaintiff was walking in an unfamiliar area, although there was no such basis in the record, and thus overemphasized his claim in the minds of the jury. Accordingly, the instruction given, although perhaps technically correct, appears by implication to indicate that the only rule applicable to the facts of the case is that stated therein. In the circumstances involved in the instant case, the question of plaintiff's negligence was clearly a question of fact to be determined by the jury. Hence any

414

instruction which would tend to indicate to the jury that plaintiff was guilty of negligence per se would be prejudicial.

Directing our inquiry to the effect of this erroneous instruction, in the light of the provisions of section 4½ of article VI of the State Constitution, we find that the controlling consideration is whether the error has resulted in a "miscarriage of justice." The test applicable in making this determination is stated in *People* v. *Watson*, 46 Cal.2d 818, 834-837 [299 P.2d 243], as follows: "That a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (P. 836; see *People* v. *Bevins,* 54 Cal.2d 71, 77-78 [4 Cal.Rptr. 504, 351 P.2d 776].) Applying this test to the record before us, we are of the opinion that it is reasonably probable that a result more favorable to plaintiff would have been reached in the absence of the error committed by the trial court in giving the instruction in question. Accordingly, we hold that it was prejudicial error to give such instruction.

Error is also predicated by plaintiff upon the refusal of the trial court to give her proposed instruction No. 15, which is a verbatim reiteration of BAJI No. 213-H. The trial court gave two of the three instructions proffered by plaintiff on the subject of invitor and invitee. The two instructions which were given defined invitee and the duty of an invitor towards an invitee. The third proffered instruction, which was rejected, describes the liability of a landlord to the invitee of a tenant. While the instructions given may have been adequate to instruct on the relationship of invitor and invitee so as to obviate any claim of error, it would have assisted the jury to have given the proffered instruction which particularly described the status of a guest or invitee of the landlord's tenant and of the respective duties of the landlord and such invitee. Inasmuch as this case will have to be retried because of the prejudicial error aforesaid, we suggest, if it is established that plaintiff is an invitee of defendant's tenant, that the trial court give an instruction in the form or substance of BAJI No. 213-H, if such an instruction is proffered.

Plaintiff also assigns as error certain comments and remarks made by the trial judge in the presence of the jury during the course of the trial. In view of the conclusions herein reached, which require a reversal of the judgment, we

need not pass upon these assertions of claimed prejudicial error.

The judgment is reversed.

Bray, P. J., and Sullivan, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 25, 1964.